IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGENCO HOLDINGS, LLC. and BIO-ENERGY (WASHINGTON), LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WASTE MANAGEMENT, INC., and WM RENEWABLE ENERGY, LLC,<br><br>Defendants. | ) | C.A. No. 26-432 (JLH) |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)**


MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jennifer Ying (#5550)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

David M. Stein
Nancy M. Olson
OLSON STEIN LLP
240 Nice Lane #301
Newport Beach, CA 92663


June 22, 2026

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ii

I. NATURE AND STAGE OF PROCEEDINGS ....1

II. SUMMARY OF ARGUMENT ....1

III. STATEMENT OF FACTS ....2

A. Air Liquide's 2012 License Agreement with Ingenco ....2

B. WMRE's Label Licenses with Air Liquide for the 16 Accused Sites ....4

C. Plaintiffs File Suit Nine Years After Learning About WMRE's Licensed Sites....4

IV. LEGAL STANDARDS ....6

A. The Complaint Must State Plausible Allegations. ....6

B. The Complaint Must Provide Sufficient Notice of Alleged Infringement. ....6

C. A License is a Complete Defense to Patent Infringement. ....7

D. No Infringement is Possible Where Patents Rights are Exhausted....7

E. Equitable Estoppel Is a Bar to a Patentee's Claims. ....8

F. The Complaint Must Provide Notice of an Alleged Breach of Contract. ....9

V. ARGUMENT ....9

A. The Complaint Should be Dismissed Because Defendants are Licensed to the '779 Patent. ....9

B. The Complaint Should Be Dismissed Because Plaintiffs' Patent Rights Have Been Exhausted. ....11

C. Equitable Estoppel Bars Plaintiffs' Patent Infringement Claims....13

D. The Complaint Fails to Plead a Plausible Claim of Either Patent Infringement or Breach of Contract. ....16

E. All Claims Against WMI Should be Dismissed. ....18

1. Plaintiffs Fail to Plausibly Allege Patent Infringement by WMI. ....18

2. Plaintiffs Fail to Plausibly Allege Breach of Contract by WMI. ....20

VI. CONCLUSION ....20

**TABLE OF AUTHORITIES**


**Cases** **Page(s)**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
960 F.2d 1020 (Fed. Cir. 1992), *abrogated on other grounds*, *SCA Hygenie Prods. Aktibolag v. First Quality Baby Prods., LLC,* 580 U.S. 328 (2017) ..................8, 14, 15

*Anton/Bauer, Inc. v. PAG, Ltd.*,
329 F.3d 1343 (Fed. Cir. 2003)..........................................................................7, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................6, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................6, 18

*Bell Oil & Gas Co. v. Allied Chem. Corp.*,
431 S.W. 2d 336 (Tex. 1968)..................................................................................20

*Bos. Sci. Corp. v. Nevro Corp.*,
415 F. Supp. 3d 482 (D. Del. 2019)...................................................................7, 17, 20

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F. 4th 1342 (Fed. Cir. 2021) ...........................................................................6, 7

*De Forest Radio Tel. & Tel. Co. v. United States*,
273 U.S. 236 (1927)...........................................................................................7, 9

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*,
No. 2:15-cv-2812, 2017 WL 2588065 (C.D. Cal. June 13, 2017)..........................................15

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018)..............................................................................6

*Fraunhofer-Gesellschaft Zur Förderung Der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*,
138 F.4th 1373 (Fed. Cir. 2025) .......................................................................15, 16

*Fraunhofer-Gesellschaft Zur Förderung Der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*,
C.A. No. 17-184, 2026 WL 809939 (D. Del. Mar. 24, 2026)..........................................15, 16

*Greenthread, LLC v. ON Semiconductor Corp.*,
C.A. No. 23-443-RGA, 2023 WL 7691632 (D. Del. Nov. 15, 2023)....................................19

*High Point SARL v. Sprint Nextel Corp.*,
817 F.3d 1325 (Fed. Cir. 2016)....................9, 15

*Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. --, 146 S. Ct. 1391 (2026)....................7, 19

*House v. Gen. Elec. Co.*,
C.A. No. 2025-1294, 2025 WL 2972670 (Fed Cir. Oct. 22, 2025)....................17

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
581 U.S. 360 (2017)....................8, 11, 13

*Kopplow Dev., Inc. v. City of San Antonio*,
399 S.W.3d 532 (Tex. 2013)....................9, 18

*Met-Coil Sys. Corp. v. Korners Unlimited., Inc.*,
803 F.2d 684 (Fed. Cir. 1986)....................7, 10

*Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*,
C.A. No. 19-1344-RGA-CJB, 2021 WL 2036671 (D. Del. May 20, 2021),
*adopted in relevant part*, 2021 WL 4350591 (D. Del. Sept. 24, 2021)....................19

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
C.A. No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017), *R&R adopted*, 2018 WL 11182741 (D. Del. Jan. 3, 2018)....................17

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)....................6, 16

*Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*,
574 S.W.3d 882 (Tex. 2019)....................9

*Quanta Comp., Inc. v. LG Elecs., Inc.*,
553 U.S. 617 (2008)....................8, 12

*SIPCO, LLC v. Streetline, Inc.*,
230 F. Supp. 3d 351 (D. Del. 2017)....................17

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
563 F.3d 1271 (Fed. Cir. 2009)....................7

*U.S. v. Univis Lens Co.*,
316 U.S. 241 (1942)....................8

*United States v. Bestfoods*,
524 U.S. 51 (1998)....................20

*Voxtur Analytics Corp. v. Haldane*,
C.A. No. 25-742-GBW-SRF, 2026 WL 788094 (D. Del. Mar. 17, 2026) ..............................17

**Statutes**

35 U.S.C. § 271(a) ........................................................................................................7, 9

35 U.S.C. § 271(b) ..........................................................................................................19

**Other Authorities**

Tex. Bus. Orgs. Code Ann. § 21.223(a)(2) .........................................................................20

Tex. Bus. Orgs. Code Ann. § 101.002(a)..............................................................................20

## I. NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Ingenco Holdings, LLC ("Ingenco") and Bio-Energy (Washington), LLC ("BEW") (collectively, "Plaintiffs") filed this action on April 15, 2026, against Defendants Waste Management, Inc. ("WMI") and WM Renewable Energy, LLC ("WMRE") (collectively, "Defendants"), alleging patent infringement and breach of contract relating to WMRE's operation of landfill renewable natural gas facilities, more than nine years after the commencement date of the Label License for the first such facility, under which BEW purports to be a third-party beneficiary. Defendants hereby move to dismiss both Counts against both Defendants. This is Defendants' opening brief in support of their motion.

## II. SUMMARY OF ARGUMENT

Plaintiffs' Complaint should be dismissed in its entirety for failing to state a claim. The face of the Complaint and its attachments confirm that WMRE has an express license to practice the patented methods at each site, which provides a complete defense to both the patent infringement and breach of contract claims. Alternatively, WMRE has an implied license to each accused site because the equipment it purchased from Air Liquide and authorized sub-licenses it received were intended to allow WMRE to perform the methods in the patent.

Moreover, Ingenco's patent rights were exhausted under U.S. Supreme Court precedent when Ingenco granted a license to Air Liquide: (i) to sell equipment for the purpose of performing the methods claimed in the asserted patent, and (ii) grant sub-licenses to Air Liquide customers who purchased its equipment for this purpose. WMRE purchased the Air Liquide equipment for each of the sixteen accused sites and obtained an authorized sub-license each time it did so. Ingenco has no more patent rights to assert in connection with these sites.

Further, Plaintiffs' patent claims are barred by the doctrine of equitable estoppel because Plaintiffs were on actual notice of Defendants' conduct for over nine years, but they sat by silently,

allowing WMRE to invest substantial resources in the accused sites without ever suggesting that this conduct would cause Plaintiffs to complain.

Plaintiffs' breach of contract claims also fail because they depend on the allegation that Defendants owe additional money to license patent rights that are already licensed and exhausted. But, to the extent these claims are not otherwise dismissed, whether considering the patent claim or the contract claim, Plaintiffs' Complaint fails to provide sufficient notice of what specific conduct allegedly gives rise to a claim that Defendants are engaged in any unauthorized conduct.

Finally, WMI should be dismissed because it is a mere holding company. Plaintiffs do not plead any plausible allegations that WMI has engaged in any conduct, much less conduct specific to the accused sites, that could give rise to any claim.

## III. STATEMENT OF FACTS

### A. Air Liquide's 2012 License Agreement with Ingenco

The Complaint alleges that WMRE operates a portfolio of landfill renewable natural gas facilities at sites throughout the United States. D.I. 1, ¶¶ 1, 17, 22. At each of these sites, WMRE purifies landfill gas created by decomposition of organic waste into pipeline-quality renewable natural gas ("RNG"). *Id.*, ¶ 21. To construct these sites, WMRE obtains components from third-party Air Liquide Advanced Technologies U.S., LLC ("Air Liquide"). *See id.*, ¶¶ 17-19. Air Liquide sells equipment used in the processing and purification of natural gas. D.I. 1, Ex. C at 1.

Air Liquide is fully licensed to U.S. Patent No. 7,731,779 (the "'779 Patent"), pursuant to a February 15, 2012 License Agreement with Ingenco, the purported owner of the '779 Patent. D.I. 1, ¶16 & Ex. C at 1. The License Agreement notes that Air Liquide manufactures and sells gas separation membranes and systems "for purification of landfill gas including; removing of $H_2S$; removal of water, non-methane organic compounds, and volatile compounds from landfill gas with a first set of pressure swing adsorption (PSA) units; and removal of carbon dioxide and

oxygen with the Membranes, where permeate from the gas separation membranes is either recycled or is used as a regeneration gas in the first set of PSA units." *Id.* It then expressly provides Air Liquide with "a non-exclusive, irrevocable, worldwide, sublicensable and assignable, royalty-bearing license to the Patent Rights … to grant Label Licenses to third parties in conjunction with Licensee's sale of Equipment to such third parties." D.I. 1, Ex. C at 2 (§ 3.1). "Patent Rights" are defined in relevant part as "United States Patent No. 7,731,779." *Id.*, § 1.4.

The 2012 License Agreement permits Air Liquide to sub-license the '779 Patent to its customers via Label Licenses. *Id.*, § 3.1. Specifically, Section 1.2 of the License Agreement defines "Label License" to mean: "a label license under the Patent Rights granted by Licensee to a third party conveying to such third party *the non-transferable right to practice Licensed Method* solely in conjunction with such third party's use of the Equipment purchased by such third party under such label license, in substantially the form attached as Exhibit A." *Id.* at 1 (emphasis added). Section 1.3 defines "Licensed Method" to mean "any method or process, the practice of which falls within the scope of Patent Rights." *Id.*

In Section 3.1(c) of the 2012 License Agreement, Ingenco granted Air Liquide the right "to practice Licensed Methods" and to grant "Label Licenses," which are sub-licenses to purchasers of the Air Liquide equipment for use in practicing the claimed methods. *Id*. A sample Label License was attached as Exhibit A to that License Agreement, further confirming Air Liquide's express license to practice the methods claimed in the '779 Patent, and its right to sublicense those rights to third parties. *Id.* at 8 (granting the purchaser of Air Liquide equipment a "license to practice the methods and processes claimed in the INGENCO IP in conjunction with your use of the equipment."). The License Agreement and the Label Licenses are governed by Texas law. *See, e.g., id.* at 6; D.I. 1, Ex. D at 3 (§ 4.1).

**B. WMRE's Label Licenses with Air Liquide for the 16 Accused Sites**

WMRE began investing in the accused sites no later than October 2016. D.I. 1, Ex. D at 57 (Oct. 21, 2016 Purchase Order) and 59 (Oct. 26, 2016 Final Invoice).[1] The exhibits attached to the Complaint show the first accused site was operational in or around January 2018. *See id.* at 55.[2] Since then, Waste Management has invested substantial resources and money in the development of RNG sites, with some coming on-line in 2022, and all of them planned for completion by 2026. *See* https://www.wastetodaymagazine.com/news/wm-invests-825-million-into-renewable-natural-gas.

For each of the 16 WMRE accused sites (developed from 2016 to the present), pursuant to the 2012 License Agreement, Air Liquide and WMRE entered a Label License. Each Label License grants to WMRE "the right to practice the methods and processes set out in the Patent Rights [*i.e.*, the '779 Patent] in connection with [WMRE's] use of the Covered Product(s) [Air Liquide equipment] in its Project." *See, e.g.,* D.I. 1, Ex. D at 53 (Section 2.01).

Under Sections 2.02 and 2.03 of each Label License Agreement, payment for the sub-license was due from WMRE to Air Liquide within 45 days of the final invoice (here, for the earliest one, 45 days after Oct. 26, 2016, *i.e.*, December 10, 2016). *Id.* Air Liquide, in turn, "make[s] a comparable payment to BEW equal to the License Payment." *Id.* The commensurate license payment from Air Liquide to BEW was due the same day. D.I. 1, Ex. C at 2 (§ 4.1).

**C. Plaintiffs File Suit Nine Years After Learning About WMRE's Licensed Sites**

After staying silent for over nine years, and only after WMRE built sixteen sites, did

[1] Defendants cite to the ECF Page Number at the top of the file stamped document where the pages of an underlying exhibit do not themselves have page numbers to reference.

[2] These transaction documents reflect that it takes over a year to build one of these sites: the Purchase Order is dated October 2016, and the final License to operate is signed January 2018.

Plaintiffs file this lawsuit on April 15, 2026. The Complaint purports to allege a single count of patent infringement on behalf of Ingenco for direct infringement of the ’779 Patent by both WMI and WMRE, and induced infringement by WMI. D.I. 1, ¶¶ 31-38. The Complaint also purports to allege breach of contract and enforcement of purported third-party beneficiary rights held by BEW against both WMRE and WMI (*id.* at ¶¶ 39-47), for WMRE’s “failure to obtain project-wide licenses from BEW as expressly authorized by each Label License Agreement.” D.I. 1, ¶ 1.[3] The Complaint, however, does not allege that WMRE failed to pay any of the license fees owed under the Label Licenses (or that Air Liquide, in turn, failed to pay BEW for the Label Licenses), nor does it define what a “project-wide” license is.

The ’779 Patent contains two independent method claims and four dependent claims. The Complaint does not identify which claim(s) are purportedly infringed; nor does it specify how each Defendant purportedly infringes, or which activities are supposedly outside the scope of the Label Licenses. *Compare* D.I. 1, ¶ 21 (“Each facility practices one or more methods covered by the claims of the ’779 Patent”) *with id.* at ¶ 24 (“Defendants operate a landfill gas purification system that practices, without authorization, one or more claims of the ’779 Patent …”) (emphasis added).

Similarly, for the breach of contract claim, the Complaint never identifies which activities by which Defendants purportedly are in breach of the Label License. Instead, the Complaint applies circular logic by parroting that Defendants have engaged in activities outside the license scope without identifying what those purported activities are. *See, e.g., id.* at ¶ 43 (“Defendants’ operation of each such projects incorporate equipment, processes, and methods beyond the scope of the Air Liquide products identified in the applicable Label License, and in any event constitutes

[3] The Complaint seeks to assert such rights by BEW notwithstanding its own allegation that, in March 2023, “BEW assigned its entire right, title, and interest in and to the ’779 Patent to Ingenco Holdings, including all causes of action and enforcement rights for past and future patent infringement.” D.I. 1, ¶ 14.

project-wide practice of the Licensed Methods for which Defendant WM Renewable Energy must obtain authorization from BEW or Ingenco Holdings.").

## IV. LEGAL STANDARDS

### A. The Complaint Must State Plausible Allegations.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Only if a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" is a claim "plausible on its face." *Id*. The Court is not required to assume the truth of legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### B. The Complaint Must Provide Sufficient Notice of Alleged Infringement.

A complaint sufficiently pleads a claim for direct infringement only where it recites "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F. 4th 1342, 1353 (Fed. Cir. 2021). The complaint must give a defendant "notice of what the [infringement] claim is and the ground upon which it rests," *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018), and "notice of what activity is being accused of infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018).

To provide the requisite notice, a plaintiff must "do more than assert that the product infringes the claim;" it must show "*how* the defendant plausibly infringes by alleging some facts connecting the allegedly infringing product to the claim elements." *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489 (D. Del. 2019) (emphasis in original). Although a plaintiff is not

necessarily required to "plead infringement on an element-by-element basis," it cannot assert a plausible claim by "reciting the claim elements and merely concluding that the accused product has these elements." *Bot M8*, 4 F.4th at 1352-53.

For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing: (1) direct infringement by a third party; (2) the alleged inducer knew that the induced acts constituted patent infringement; and (3) the alleged inducer took active steps to encourage direct infringement. *Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. --, 146 S. Ct. 1391, 1398 (2026) (citing cases).

**C. A License is a Complete Defense to Patent Infringement.**

A party that has a license – whether express or implied – cannot be liable for patent infringement because the license authorizes the conduct. *See* 35 U.S.C. § 271(a) (infringing acts must be "without authority"); *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241 (1927).

The implied license defense arises where "a patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1279 (Fed. Cir. 2009). "[T]he existence of an implied license is a question of law." *Met-Coil Sys. Corp. v. Korners Unlimited., Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986). "A patentee grants an implied license to a purchaser when (1) the patentee sells an article that has no noninfringing uses and (2) the circumstances of the sale plainly indicate that the grant of a license should be inferred." *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003) ("[A]n implied license stems from the exhaustion of a patent right.").

**D. No Infringement is Possible Where Patents Rights are Exhausted.**

"The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Comp., Inc. v. LG Elecs., Inc.*,

553 U.S. 617, 625 (2008). The exhaustion doctrine is a limit on the scope of the patentee's rights. *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 362 (2017). A patentee cannot, through the patent laws, enforce restrictions on use or resale after an authorized sale. *Id*. at 376. "In sum, patent exhaustion is uniform and automatic. Once a patentee decides to sell—whether on its own or through a licensee—that sale exhausts its patent rights, regardless of any post-sale restrictions the patentee purports to impose, either directly or through a license." *Id*. at 377. Where a purchaser of a product from a licensee does not comply with post-sale restrictions imposed on the licensee by the licensor, the "only recourse for the licensee is through contract law." *Id*. at 376.

Patented methods "may be 'embodied' in a product, the sale of which exhausts patent rights." *Quanta*, 553 U.S. at 628. "[T]he traditional bar on patent restrictions following the sale of an item applies when the item sufficiently embodies the patent – even if it does not completely practice the patent – such that its only and intended use is to be finished under the terms of the patent." *Quanta*, 553 U.S. at 628; *see also U.S. v. Univis Lens Co.*, 316 U.S. 241, 250-51 (1942).

**E. Equitable Estoppel Is a Bar to a Patentee's Claims.**

Equitable estoppel bars a patent infringement claim if a patentee's misleading behavior lulls the defendants into thinking their conduct was acceptable, only for the patentee to sue over this same conduct later. The elements of equitable estoppel are: (1) a patentee's misleading conduct that leads an accused infringer to reasonably infer the patentee does not intend to assert its patent; (2) defendants' reliance on that conduct; and (3) material prejudice if the patentee is allowed to pursue its claims. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992), *abrogated on other grounds*, *SCA Hygenie Prods. Aktibolag v. First Quality Baby Prods., LLC,* 580 U.S. 328 (2017). Equitable estoppel runs through the life of a patent, and it binds successor patent owners. *See, e.g., High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1331 (Fed. Cir. 2016).

### F. The Complaint Must Provide Notice of an Alleged Breach of Contract.

Under Texas law, a breach of contract claim requires plaintiff to plead and prove that: "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). A complaint, for breach of contract or otherwise, is only "sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013).

## V. ARGUMENT

### A. The Complaint Should be Dismissed Because Defendants are Licensed to the '779 Patent.

WMRE is licensed to practice the '779 Patent, which is a complete defense to patent infringement because it authorizes the accused conduct. *See* 35 U.S.C. § 271(a); *De Forest Radio*, 273 U.S. at 241. Plaintiffs' derivative contract claims are also barred because Plaintiffs offer no plausible allegations of unauthorized conduct in the Complaint. The Complaint and attachments confirm that WMRE has an express license from Air Liquide for each of the sixteen accused sites (D.I. 1, Ex. D), and that Air Liquide granted those sixteen sub-licenses pursuant to its 2012 License Agreement with Ingenco. *Id.* at Ex. C. Sections 1.2 and 1.3 of that Agreement specifically define the sub-license Air Liquide is authorized to grant (and did grant) to cover all methods claimed in the '779 Patent. *Id*. at D.I. 1, Exs. C at 2 & D. Even assuming WMRE is practicing the method claims, this should end the inquiry and foreclose Plaintiffs' patent infringement claims, as well as their derivative contract claims.

Even if the Label Licenses were not deemed express licenses, WMRE would still have an

implied license for each accused site. An implied license arises where conduct suggests authorization. *See Met-Coil Sys.*, 803 F.2d at 687 (affirming finding of implied license where sale of machine useful only in performing the claimed process plainly indicated the grant of a license should be inferred). Where a plaintiff or its licensees supplied products intended for the accused use, a defendant's conduct is authorized and non-infringing. *See, e.g., Anton/Bauer,* 329 F.3d at 1351 ("We hold that, by the unrestricted sale of the female plate, Anton/Bauer grants an implied license to its customers to employ the combination claimed in the '204 patent.").

Here, the face of each Label License, and its accompanying transaction documents, confirm the equipment Air Liquide sold to WMRE along with the sub-licenses was intended for the very purpose of WMRE operating its natural gas processing sites. *See* D.I. 1, Ex. C at 1; Ex. D at 1. There is no other possible purpose identified in the Complaint, nor could there be.

The License Agreement and Label Licenses expressly license not just a Covered Product but a Licensed Method to practice the '779 Patent in using that product. *Id.* at Ex. C at 1-2 (§§ 1.2, 1.3, 3.1). Indeed, the '779 Patent recites only method claims. The Complaint never explains what it contends is actually licensed under the Label Licenses if WMRE could not perform the '779 Patent methods without a further license. The Complaint never explains what the Label Licenses conveyed. If the licenses do not permit the practice of the Licensed Methods using Air Liquide equipment, then what do they cover? Nor does the Complaint explain what was purchased for the license fee or why WMRE would pay valuable consideration for patent rights it purportedly could not practice. The Complaint also does not explain why a license would even be needed to practice only one step of a claimed method. Because requiring WMRE to obtain a further license to practice the Licensed Method would render the existing Label Licenses, for which WMRE paid valuable consideration (and for which Air Liquide paid Plaintiffs), a meaningless nullity, WMRE must at

least be deemed to be expressly or impliedly licensed to practice the claimed methods.

### B. The Complaint Should Be Dismissed Because Plaintiffs' Patent Rights Have Been Exhausted.

The patent infringement count should be dismissed because Air Liquide's authorized sales to WMRE exhausted Ingenco's patent rights. Beginning in 2016, WMRE purchased equipment from Air Liquide for use in processing and purifying natural gas. D.I. 1, Ex. D at 57, 59. Plaintiffs explicitly licensed Air Liquide the right to practice the Licensed Methods of the '779 Patent and to grant sub-licenses for third parties to practice the same. D.I. 1, Ex. C at 2 (§ 3.1). For each of the 16 accused sites, WMRE bought equipment from Air Liquide, and, for each site, Air Liquide granted WMRE a sub-license to use the equipment to perform the methods claimed in the '779 Patent consistent with Air Liquide's License rights. D.I. 1, Ex. C (2012 License Agreement); Ex. D (compiling all 16 Label Licenses from Air Liquide to WMRE, as well as some accompanying transaction documents for each). Each such Label License explicitly acknowledged that "Label Licensee [*i.e.*, WMRE] desires to obtain a Label License pursuant to the terms of the License Agreement and this Agreement, *in order to permit the authorized use of such Covered Products in its project*," and explicitly granted WMRE "the right to practice the methods and processes set out in the Patent Rights in connection with Label Licensee's use of the Covered Product(s) in its Project." *E.g.,* D.I. 1, Ex. D at 1, 2 (§ 2.01) (emphasis added).

The Supreme Court has made clear that, once an authorized sale from Air Liquide to WMRE occurred, Plaintiffs' patent rights were automatically exhausted. *Lexmark*, 581 U.S. at 375-76 ("As a result, the sale transfers the right to use, sell, or import because those are the rights that come along with ownership, and the buyer is free and clear of an infringement lawsuit because there is no exclusionary right left to enforce."). The exhaustion doctrine applies equally to method claims. *Quanta*, 553 U.S. at 629 ("[T]his Court has repeatedly held that method patents were

exhausted by the sale of an item that embodied the method.”).

Plaintiffs therefore have no more patent rights to assert relating to these sales. Because there are no accused sites for which WMRE does not have a sub-license from Air Liquide, the patent infringement claim should be dismissed for failure to state a claim. *See Quanta*, 553 U.S. at 631 (exhaustion was triggered because the product’s only reasonable and intended use was to practice the patent and because they “embodie[d] essential features of [the] patented invention.”).

Notably, Plaintiffs plead no plausible facts (or any facts) from which it can be inferred that the Licensed Methods granted to Air Liquide, and, in turn, sub-licensed to WMRE, do not sufficiently embody essential features of the patented methods. Indeed, the License Agreement recites that its very purpose is to permit Air Liquide (and its sub-licensees) to practice the Licensed Methods, which expressly include the ’779 Patent. D.I. 1, Ex. C at 1. This leaves no doubt that Air Liquide’s sales sufficiently embody the ’779 Patent for purposes of the method-claim analysis under *Quanta*. 533 U.S. at 631 (equipment not required to perform entire method for license defense to apply; it is sufficient that equipment’s intended use is to perform the claimed method). Because Ingenco’s patent rights have been exhausted, there can be no infringement claim.

Indeed, Plaintiffs already have been compensated for their patent rights because Air Liquide paid a license fee to Plaintiffs for each Label License granted to WMRE. D.I. 1, Ex. C at 2 (§ 4.1). The Supreme Court has confirmed that the policy underlying exhaustion is to prevent double-dipping after an authorized sale. “Exhaustion does not arise because of the parties’ expectations about how sales transfer patent rights. More is at stake when it comes to patents than simply the dealings between the parties, which can be addressed through contract law. Instead, exhaustion occurs because, in a sale, the patentee elects to give up title to an item in exchange for payment. Allowing patent rights to stick remora-like to that item as it flows through the market

would violate the principle against restraints on alienation." *Lexmark*, 581 U.S. at 381-82.

Further, here, Plaintiffs' breach of contract claims, which rely on an allegation that Defendants owe money for Ingenco's patent rights that existed after the license grants to Air Liquide/WMRE, also fail because Ingenco's patent rights were exhausted. There is no contract claim that remains because even assuming any use by WMRE of the methods in the '779 Patent, such use has already been licensed and paid for. *See supra,* at 9-11.

### C. Equitable Estoppel Bars Plaintiffs' Patent Infringement Claims.

Plaintiffs' claims are also barred by the doctrine of equitable estoppel because Plaintiffs stayed silent for over nine years while WMRE invested substantial resources in building sixteen separate RNG facilities, and paid for a license to each, without any suggestion that Plaintiffs would contest this conduct. The Complaint confirms Plaintiffs had actual knowledge of WMRE's conduct beginning no later than December 2016 because Air Liquide paid BEW the required license fee every time WMRE paid the sub-license fee to Air Liquide. D.I. 1, Ex. C at 2 (§ 4.1).[4]

Over the next nine-plus years, WMRE invested heavily to build, open, and operate the 16 accused sites. *See* D.I. 1, Ex. D (WMRE's Label Licenses for each site). Plaintiffs were on actual, real-time notice of every one of these 16 sites as they were developed and launched, because the agreements required payment of the license fee on the same 45-day timetable. *See supra,* at 4.

Yet, despite Plaintiffs' actual knowledge that WMRE was building and operating these 16 sites, Plaintiffs sat by silently, for over nine years, never once approaching WMRE to express the view that WMRE's conduct was unlicensed or in any way would prompt Plaintiffs to assert purported patent or contract rights. Instead, Plaintiffs waited until this massive development was nearly complete before popping up, out of the blue, to send a letter to Defendants in March 2026

[4] There are no allegations in the Complaint that any payments were not made, were not made according to schedule, or that Plaintiffs were unaware of these sites when each was licensed.

raising, for the first time, a claim seeking an additional license to the same patent rights. *See* D.I. 1, ¶ 26 and Ex. E.

Equitable estoppel bars a patent claim, such as this, where there is prolonged silence after knowledge of alleged infringement. *See, e.g., Aukerman*, 960 F.2d at 1028 ("Conduct may include … silence where there was an obligation to speak.") (cleaned up). Continued silence is particularly problematic. *Id*. at 1043-44 ("[T]he patentee's continued silence reenforces the defendant's inference … that the defendant will be unmolested."). The duty to speak often arises from the relationship between the patentee and accused infringer. *Id*. at 1043 ("To show reliance, the infringer must have had a relationship … with the plaintiff which lulls the infringer into a sense of security in going ahead ….").  In this case, the Complaint confirms that Plaintiffs, Air Liquide, and WMRE had an underlying business relationship spanning 16 sites over nearly ten years before Plaintiffs first raised any issue. D.I. 1, Exs. C, D. For each site, WMRE purchased the equipment and accompanying Label License from Air Liquide, and, in turn, Air Liquide paid the license fee to Ingenco, without ever being alerted that Plaintiffs would contend something was amiss. This scenario is precisely what the doctrine of equitable estoppel was intended to prevent.

Nor can there be any doubt WMRE satisfies the reliance element. Plaintiffs' complete failure to say anything, for over nine years, as WMRE invested substantial money and resources in these RNG sites, again and again executing the Label License and transaction documents without issue, instilled a well-founded belief that its activities were licensed and authorized. Plaintiffs gave WMRE no reason whatsoever to be aware of, or concerned about, any risk of an infringement or breach allegation.

Plaintiffs' multi-year acquiescence also establishes the material economic prejudice to WMRE if this case were allowed to proceed. *See Fraunhofer-Gesellschaft Zur Förderung Der*

*Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, 138 F.4th 1373, 1382 (Fed. Cir. 2025) (economic prejudice exists when reliance leads accused infringer to proceed with allegedly infringing design); *High Point*, 817 F.3d at 1332 (finding economic prejudice where defendant invested in product development while patentee sat by); *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 2:15-cv-2812, 2017 WL 2588065, *4 (C.D. Cal. June 13, 2017) ("[T]he substantial increase in Defendants' exposure [during patentee's silence] constitute[d] clear economic harm."). "A patentee may [not] intentionally lie silently in wait watching damages escalate," and "[e]conomic prejudice may arise where a defendant … will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Aukerman*, 960 F.2d at 1033.

Indeed, just a few months ago, a Court in this District held on summary judgment (after remand from the Federal Circuit) that equitable estoppel barred a patent infringement claim where the patentee's silence established reliance by the accused infringer causing economic prejudice. *See Fraunhofer-Gesellschaft Zur Förderung Der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, C.A. No. 17-184, 2026 WL 809939, at *10 (D. Del. Mar. 24, 2026) ("[T]he Court concludes that had Fraunhofer raised an infringement issue, SXM would have sought to minimize its exposure, either through negotiating a license or pursuing other ways to limit its potential exposure to Fraunhofer's infringement claims. This provides an independent basis for reliance.").

The District Court in *Fraunhofer* also noted that, "the Federal Circuit held that SXM can independently establish reliance by showing that it 'continuously sought to ensure it had licenses to intellectual property' such that the Court may conclude that SXM 'would have taken steps to limit its liability, 'such as seeking a license,' had it been threatened with litigation" or "had it known it was exposed to litigation, [SXM] would have sought additional protection against the

[A]sserted [P]atents." *Id*. at *8 (citing *Fraunhofer*, 138 F.4th at 1381) (internal quotation marks omitted). The same is true here where the Complaint and its attachments show that WMRE obtained a license from Air Liquide for each of the accused 16 sites, paying for a license to operate each site. D.I. 1, Ex. D. Just like in *Fraunhofer*, here, the Court may conclude from the face of the Complaint and its attachments that WMRE's continuous pattern of taking licenses when they were required establishes that WMRE has suffered economic prejudice by making substantial investments in building each of 16 sites over a period of ten years, each of which it reasonably believed was licensed.

This is the textbook example of where the doctrine of equitable estoppel bars a plaintiffs' patent claims. And, here, this also bars Plaintiffs' contract claims because those claims are based on the allegation that WMRE owes additional money for patent rights. If equity bars Plaintiffs from asserting those patent rights, as it should, it also necessarily bars Plaintiffs from seeking additional money on top of the license payments it already received for those same patent rights.

### D. The Complaint Fails to Plead a Plausible Claim of Either Patent Infringement or Breach of Contract.

To the extent the Court were to conclude that the patent infringement and contract claims are not barred by a license, patent exhaustion, and/or by equitable estoppel, then the Complaint should be dismissed for failure to put Defendants on notice of the alleged wrongful activity.

Specifically, the claims should be dismissed for failing to provide Defendants with the requisite "notice of what activity is being accused of infringement." *See Nalco*, 883 F.3d at 1350. All Plaintiffs allege is that WMRE owns and operates 16 facilities, that these facilities operate some system that "practices one or more methods covered by the claims of the '779 Patent," and that WMRE has made money doing so. *See* D.I. 1, ¶¶ 21-24. *See SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017) (finding complaint "insufficient to plausibly allege patent

infringement" where complaint alleged only that "One, here are ten patents we own. Two, you sell some products, which we have identified. Plaintiff makes a legal conclusion, to wit, the sales of your products infringe our patents."). Here, Plaintiffs never identify what activities purportedly are outside the scope of the Label Licenses or how those activities are purportedly infringing.

Plaintiffs' formulaic paraphrase of the '779 Patent's method steps (D.I. 1, at ¶ 23) and bare invocation of § 271 (*id.* at ¶¶ 33, 34) fare no better, as these allegations are entirely conclusory and thus insufficient. *See N. Star Innovations, Inc. v. Micron Tech., Inc.*, C.A. No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017), *R&R adopted,* 2018 WL 11182741 (D. Del. Jan. 3, 2018) (granting motion to dismiss where complaint "merely cop[ied] the language of a claim element, and then baldly stat[ed] (without more) that an accused product ha[d] such an element"); *see also Voxtur Analytics Corp. v. Haldane*, C.A. No. 25-742-GBW-SRF, 2026 WL 788094, at *5 (D. Del. Mar. 17, 2026) (recommending dismissal of direct infringement claims where complaint "simply parrot[ed] the language of each claim limitation without indicating where each limitation is found in the accused products"); *Bos. Scientific*, 415 F. Supp. 3d at 490 (granting motion to dismiss where complaint made "no attempt to connect specific components of the accused systems to elements of the asserted claims"). Plaintiffs fail to "provide any allegations of how [WMRE's accused facilities] perform the [claims of the '779 Patent]." *House v. Gen. Elec. Co.*, C.A. No. 2025-1294, 2025 WL 2972670, at *2 (Fed Cir. Oct. 22, 2025).[5]

Likewise, the Complaint fails to provide adequate notice of the activity alleged to constitute breach of contract. *Kopplow Dev.,* 399 S.W.3d at 536. The Label Licenses on their face expressly provide a license to practice the '779 Patent. D.I. 1, Ex. D, at 2 (§ 2.01). Yet, all the Complaint

[5] Although the Complaint and the Label Licenses allude to the concept of a "Project wide license" (*See, e.g.,* D.I. 1, Ex. D at 2 (§2.01)), nowhere is that defined, nor are there any allegations that explain what activities purportedly would fall outside the Licensed Methods or not already be exhausted.

does is paraphrase the contractual language in Section 2.01 about what the Label Licenses purportedly do not authorize without identifying what specific conduct by Defendants is unauthorized or purportedly falls outside the scope of the Licensed Methods. D.I. 1 at ¶ 43 ("Defendants' operation of each such projects incorporate equipment, processes, and methods beyond the scope of the Air Liquide products identified in the applicable Label License, and in any event constitutes project-wide practice of the Licensed Methods for which Defendant WM Renewable Energy must obtain authorization from BEW or Ingenco Holdings."). Nowhere do Plaintiffs identify what "project-wide practice" means, or how any of Defendants' conduct could be outside the licensed conduct. These allegations, too, are entirely conclusory and fail to provide adequate notice of the activities alleged to fall outside the scope of the Label Licenses that could constitute an alleged breach. *Iqbal,* 556 U.S. at 678 *(quoting Twombly,* 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As a result, the breach of contract claim also should be dismissed.

### E. All Claims Against WMI Should be Dismissed.

At a minimum, this action should be dismissed in its entirety as against WMI because the Complaint does not allege – nor could it – that WMI itself engaged in any of the accused acts. To the contrary, the mere allegation that WMI is the parent company of WMRE is insufficient as a matter of law to state a claim.

#### 1. Plaintiffs Fail to Plausibly Allege Patent Infringement by WMI.

Plaintiffs plead only that WMI "is the parent company of WM Renewable Energy, L.L.C. and … exercises direction and control over WM Renewable Energy's RNG operations, including each of the Infringing Projects described herein." D.I. 1, ¶ 4. Plaintiffs then try to group "Defendants" together, alleging that "Defendants operate a landfill gas purification system that practices, without authorization, one or more claims of the '779 patent," D.I. 1, ¶ 23 (emphasis

added), notwithstanding their earlier acknowledgement that "Defendant WM Renewable Energy owns and operates" the facilities. D.I. 1, ¶ 21 (emphasis added). It is well established that "[j]ust because a company is the parent company of a subsidiary, that does not (without more) mean that the parent is automatically liable for patent infringement committed by the subsidiary." *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, C.A. No. 19-1344-RGA-CJB, 2021 WL 2036671, at *5 (D. Del. May 20, 2021), *adopted in relevant part*, 2021 WL 4350591 (D. Del. Sept. 24, 2021). But the Complaint is devoid of any allegations concerning any alleged activities by WMI, much less any activities specific to the accused sites.

Plaintiffs' single paragraph in the Complaint on induced infringement, alleging only that "Defendant [WMI] has induced and continues to induce infringement of the '779 Patent, in violation of 35 U.S.C. § 271(b), by directing, controlling, authorizing, and facilitating the infringing activities of WM Renewable Energy at the Infringing Projects," D.I. 1, ¶ 34, falls well short of sufficiently pleading induced infringement, especially in the wake of the Supreme Court's recent decision in *Hikma Pharmaceuticals*. 146 S. Ct. 1391. To the contrary, these allegations are again entirely conclusory and fail to plausibly allege how WMI—a holding company—has directed, controlled, authorized, or facilitated WMRE's activities, let alone with the specific intent required to support induced infringement. *See, e.g., Greenthread, LLC v. ON Semiconductor Corp.*, C.A. No. 23-443-RGA, 2023 WL 7691632, at *1 (D. Del. Nov. 15, 2023) ("The FAC discusses Greenthread's induced infringement claim in only three paragraphs, none of which mention direct infringement by a third party, knowledge of infringement, or specific intent."). Plaintiffs' pleading falls short of even providing such "conclusory statements that merely recite the legal requirements for induced … infringement" that have been held insufficient to state a claim. *See, e.g. Bos. Sci. Corp.*, 415 F. Supp. 3d at 492.

### 2. Plaintiffs Fail to Plausibly Allege Breach of Contract by WMI.

The Complaint characterizes the breach of contract claim as "arising from Defendant WM Renewable Energy, L.L.C.'s failure to obtain project-wide license[s] from BEW …" D.I. 1, ¶ 1 (emphasis added); *see id.* ¶¶ 40, 41 (acknowledging that each Label License was executed by WMRE). Indeed, WMI did not sign any of the Label Licenses or accompanying documents. D.I. 1-4 (Ex D). It is black letter law that WMI cannot be held liable for any purported breach by WMRE simply because WMI is WMRE's indirect parent, and the Complaint pleads no facts supporting any other theory. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation … is not liable for the acts of its subsidiaries."); *see also Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W. 2d 336, 341 (Tex. 1968) (finding parent corporation not liable for contract obligations of subsidiary corporation); Tex. Bus. Orgs. Code Ann. § 21.223(a)(2) and 101.002(a).

Because Plaintiffs provide no plausible allegations concerning how WMI allegedly infringed the '779 Patent, directly or indirectly, or breached the Label Licenses, the Complaint as to WMI should be dismissed.

## VI. CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

Karen Jacobs (#2881)
Jennifer Ying (#5550)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Nancy M. Olson
David M. Stein
OLSON STEIN LLP
240 Nice Lane #301
Newport Beach, CA 92663

June 22, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 22, 2026, upon the following in the manner indicated:

| | |
|---|---|
| Karen Keller, Esquire<br>Emily DiBenedetto, Esquire<br>SHAW KELLER LLP<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Robert J. Rauch<br>LAW OFFICES OF ROBERT J. RAUCH<br>25141 Star View Road<br>Mt. Vernon, Washington 98273<br>*Attorney for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Larry D. Moffett<br>LAW OFFICE OF LARRY D. MOFFETT LLC<br>39 County Road 231<br>Oxford, MS 38655<br>*Attorney for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Karen Jacobs*

Karen Jacobs (#2881)