# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LITL LLC,

      **Plaintiff,**

**v.**

HP INC.,

      **Defendant.**

**Court No. 1:23-cv-00120-JCG**

LITL LLC,

      **Plaintiff,**

**v.**

DELL TECHNOLOGIES INC.
AND DELL INC.,

      **Defendants.**

**Court No. 1:23-cv-00121-JCG**

LITL LLC,

      **Plaintiff,**

**v.**

ASUSTEK COMPUTER INC.
AND ASUS GLOBAL PTE. LTD.,

      **Defendants.**

**Court No. 1:23-cv-00122-JCG**

Page 2

# OPINION & ORDER

[Granting in part and denying in part as moot Defendants' Motion for Summary Judgment on Common Issues and Defendant HP Inc.'s Motion for Summary Judgment; Denying as moot Plaintiff's Motion for Summary Judgment and to Exclude Expert Opinions Regarding Issues Common to Defendants; Denying as moot Plaintiff's Daubert Motion to Exclude Testimony of Julia Rowe Regarding Settlement Agreements and Offers.]

Dated: June 30, 2026

Adam W. Poff, Robert M. Vrana, Alexis N. Stombaugh, and Jennifer P. Siew, Young Conaway Stargatt & Taylor, LLP, of Wilmington, DE; Michael A. Albert, Eric J. Rutt, Gerald B. Hrycyszyn, Hunter D. Keeton, Jason W. Balich, and Karen E. Gover, Wolf, Greenfield & Sacks, P.C., of Boston, MA.  Attorneys for Plaintiff LiTL LLC.

Jeff Castellano and Angela C. Whitesell, DLA Piper LLP (US), of Wilmington, DE; Sean Cunningham and Erin Gibson, DLA Piper LLP (US), of Washington, D.C.; James M. Heintz, DLA Piper LLP (US), of Reston, VA; Jackob Ben-Ezra, DLA Piper LLP (US), of Houston, TX; Claire Schuster, DLA Piper LLP (US), of Boston, MA; Aima Mori, DLA Piper LLP (US), of Chicago, IL; Kevin J. Post, Sheppard Mullin, of New York, N.Y.  Attorneys for Defendant HP Inc.

Jeremy A. Tigan, Morris, Nichols, Arsht & Tunnell LLP, of Wilmington, DE; Eugene Y. Mar, Erik C. Olson, Victoria C. Huang, and Raven Quesenberry, Farella Braun + Martel LLP, of San Francisco, CA.  Attorneys for Defendants Dell Technologies Inc. and Dell Inc.

Stephen J. Kraftschik, Polsinelli PC, of Wilmington, DE; Michael J. Newton and Brady Cox, Alston & Bird LLP, of Dallas, TX; Yuri Mikulka, Alston & Bird LLP, of Los Angeles, CA.  Attorneys for Defendants ASUSTek Computer Inc. and Asus Global Pte. Ltd.

Choe-Groves, Judge: Before the Court are Defendants HP Inc. ("HP"), Dell

Technologies Inc. and Dell Inc., and ASUSTek Computer Inc. and Asus Global

Pte. Ltd.'s (collectively, "Defendants") Motion for Summary Judgment on

Common Issues and Defendant HP's Motion for Summary Judgment and Motion to Exclude Expert Testimony (D.I. 297), Plaintiff LiTL LLC's ("Plaintiff" or "LiTL") Motion for Summary Judgment and to Exclude Expert Opinions Regarding Issues Common to Defendants (D.I. 299), and Plaintiff's Daubert Motion to Exclude Testimony of Julia Rowe Regarding Settlement Agreements and Offers (D.I. 303).[1]  The Court held oral argument on May 19, 2026.  Am. Scheduling Order (D.I. 338).

For the reasons discussed below, the Court grants in part and denies in part as moot Defendants' Motion for Summary Judgment on Common Issues and Defendant HP's Motion for Summary Judgment and Motion to Exclude Expert Testimony, denies as moot Plaintiff's Motion for Summary Judgment and Motion to Exclude Expert Testimony Regarding Issues Common to Defendants, and denies as moot Plaintiff's Daubert Motion to Exclude Testimony of Julia Rowe Regarding Settlement Agreements and Offers.

## BACKGROUND

On February 1, 2023, LiTL filed Complaints against Defendants alleging infringement of eight patents.  Joint Statement Undisputed Facts Defs.' Mot. Summary J. Common Issues and Def. HP Inc.'s Mot. Summ. J. ("Joint Statement")

---

[1] Citations to the docket primarily refer to the first-filed action, LiTL LLC v. HP Inc. (23-cv-00120-JCG), unless otherwise indicated.

at ¶ 1 (D.I. 339, 347).  On September 19, 2024, LiTL dismissed with prejudice two of the originally asserted patents, U.S. Patent Nos. 8,624,844 and 8,612,888.  Id. at ¶ 2.  LiTL's six remaining asserted patents are U.S. Patent Nos. 8,289,688 ("the '688 patent"), 9,563,229 ("the '229 patent"), 10,289,154 ("the '154 patent"), 9,003,315 ("the '315 patent"), 9,880,715 ("the '715 patent"), and 10,564,818 ("the '818 patent") (collectively, "the Asserted Patents").  Id. at ¶ 3.

## LEGAL STANDARD

The Court has jurisdiction over the underlying actions pursuant to 28 U.S.C. §§ 1331 and 1338.

Summary judgment is appropriate when a party demonstrates that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is a fact that may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  Material facts are those "that could affect the outcome" of the proceeding.  Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011).  The evidence and reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The "moving party bears the burden of proving that no genuine issue of material fact is in dispute." Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the nonmoving party and the Court must not make credibility findings. Anderson, 477 U.S. at 255. If the moving party satisfies this initial burden, the nonmoving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must go beyond the assertions and allegations of the pleadings and show through affidavits, depositions, answers to interrogatories, or admissions on file that a genuine dispute of material fact exists. Id. at 324.

The Court must grant summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

## DISCUSSION

### I.  Defendants' Motion for Summary Judgment: License and Exhaustion

The Court finds that the following facts are undisputed:

On August 13, 2025, Plaintiff and an entity ("Licensee")[2] entered into a

License Agreement ("the Agreement") to resolve differences concerning

Licensee's accused devices and software as related to the actions and Asserted

Patents.  Joint Statement at ¶ 5.  The Agreement recites that "[Licensee] denies

infringement and any liability as to the Asserted Patents[.]"  Id. at ¶ 7.  Nothing in

the Agreement "shall extinguish, impair or otherwise effect any defenses of the

[Licensee] Entities or [Licensee] Customers against the Licensed Patents,

including that the Licensed Patents are not infringed, are invalid, or are not

enforceable."[3]  Id. at ¶ 9.  Section 3.1(b) of the Agreement states:

> For activity occurring before the Effective Date, PLAINTIFF Releasing
> Entities each hereby voluntarily and irrevocably releases any and all
> third parties (including any and all of the [Licensee] Released Entities'
> previous, current and future customers, suppliers, contract
> manufacturers, original equipment manufacturers, service providers,
> licensees, distributors, resellers, independent software vendors,
> subscribers, users and end users, whether direct or indirect)
> ("[Licensee] Customers") of and from any and all Claims which any of
> the PLAINTIFF Releasing Entities have, may have had, might have
> asserted, may now have or assert, or may hereafter have or assert

---

[2] The Court refers to this entity as "Licensee" to reflect redactions made in public versions of the filed documents.

[3] The Agreement defines "Licensed Patents" as "(a) the Asserted Patents (b) any and all other patents, patent applications, registrations and/or other intellectual property owned or controlled by PLAINTIFF Entities as of the Effective Date or anytime thereafter . . . ."  Dec. Angela C. Whitesell Supp. Defs.' Mot. Summ. J. Def. HP Mot. Summ. J. Mot. Exclude Expert Testimony, Ex. 1 ("The Agreement") at 3, (D.I. 302-1, 309-1).  The Agreement also lists Plaintiff as the owner of all right, title, and interest in the '688, '229, '154, '315, '715, and '818 Patents.  Id. at 1.

against [Licensee] Customers, or any of them, in connection with the Licensed Patents (but only as to [Licensee] Products and the use thereof) or in connection with any act, event or thing occurring before the Effective Date which, had it occurred on or after the Effective Date, would be licensed or subject to a covenant under Section 4 below (but only as to [Licensee] Products and the use thereof).  For purposes of clarity, anything in this clause to the contrary notwithstanding, PLAINTIFF Releasing Entities do not release any Claims that PLAINTIFF has asserted against Defendant OEMs in the Actions for the sale of products made or sold by or on behalf of Defendant OEMs except claims for which all essential inventive elements are embodied in a [Licensee] Product.

Id. at ¶ 12.  Subsections (a) and (b) of Section 4.1 recite the following:

4.1(a) PLAINTIFF Releasing Entities hereby grant to [Licensee] Released Entities a worldwide, irrevocable, nonexclusive, non-sublicensable, non-transferable, perpetual, fully paid up, royalty-free, license ("License") under the Licensed Patents, commencing on the Effective Date: (a) to design, make, have made (including software replication under license), use, follow and provide instruction on the use of, purchase, license, distribute, have distributed, sell, offer for sale, lease, host, stream, brand, import, export, provide, distribute, supply, promote, market, commercialize, exploit or otherwise provide, ("Sell") any [Licensee] Products, (b) to use or practice (and follow and provide instruction on the use or practice of) any method or steps ("Use"), provide a means to use or practice (and follow and provide instruction on the use of any means for using or practicing) any method or steps ("Practice") and otherwise commercialize or exploit ("Exploit") the Licensed Patents in any [Licensee] Products and (c) engage in any act relating to any [Licensee] Products that otherwise would be prohibited but for having a license under the Licensed Patents.

4.1(b) Cumulative with the rights conferred by Section 4.1(a), PLAINTIFF Releasing Entities hereby grant to [Licensee] Customers commencing on the Effective Date, a License under the Licensed Patents to Sell, Use, Practice and Exploit [Licensee] Products, alone or in combination with other hardware or software; provided, however, that for each such [Licensee] Product, the License is only to any claim

of the Licensed Patents all of whose essential inventive elements are embodied in said [Licensee] Product.  No other rights are granted hereunder by implication, estoppel, statute, operation of law or otherwise.

Id. at ¶¶ 13–14.  The Agreement shall be construed and controlled by the internal laws of the State of Washington (excluding conflict of laws principles)." Id. at ¶ 17.

"Licensee Products" are defined as:

[A]ny past, present or future machine, apparatus, tool, kit, including porting or development kits, component, technology, protocols, hardware, software, product, system, equipment, offering or service, including instructions on use, marketing materials, specifications and other documentation and information, ("Product") that is directly or indirectly made, designed, used, sold, offered for sale, purchased, branded, imported, exported, developed, written, composed, distributed, offered or marketed by or for, bought, leased, hosted, licensed or otherwise obtained from or made available, supplied, streamed, distributed or otherwise provided by or for [Licensee] Entities.  For purposes of clarity, [Licensee] Products do not include any of Defendant OEMs products that PLAINTIFF has accused of infringing the Asserted Patents in the Actions or any subsequent versions thereof that are not colorably different.

Id. at ¶ 8.  Defendants' accused products all use Licensee Products.  Id. at ¶ 18.

## A.    Implied License

An implied license is a defense to patent infringement because infringement requires an unauthorized use of a patented invention.  Anton/Bauer, Inc. v. PAG, Ltd., 329 F.3d 1343, 1350 (Fed. Cir. 2003); see 35 U.S.C. § 271(a).  Implied

licenses between a patentee and a purchaser, or a licensee and a purchaser, require

that the licensee: (1) sell an article with no non-infringing uses; and (2) the

circumstances of the sale plainly indicate that the grant of a license should be

inferred. Anton/Bauer, Inc., 329 F.3d at 1350 (quoting Met-Coil Sys. Corp. v.

Korners Unlimited, Inc. ("Met-Coil"), 803 F.2d 684, 686 (Fed. Cir. 1986)); see

Jacobs v. Nintendo of Am., Inc., 370 F.3d 1097, 1100 (Fed. Cir. 2004). If an

implied license is derived from an express license, then the question of non-

infringing use is irrelevant. Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.

("Zenith"), 522 F.3d 1348, 1360–61 (Fed. Cir. 2008). Whether an implied license

exists is a question of law. See Anton/Bauer, Inc., 329 F.3d at 1348.

Implied licenses may arise by acquiescence, conduct, equitable estoppel, or

legal estoppel. Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc., 103 F.3d 1571,

1580 (Fed. Cir. 1997). The U.S. Court of Appeals for the Federal Circuit

("CAFC") has recognized that a patent license does not convey to the licensee an

absolute right to make, use, or sell a product, because not even the patentee is

given that right. Endo Pharms. Inc. v. Actavis, Inc., 746 F.3d 1371, 1377 (Fed.

Cir. 2014); see 35 U.S.C. § 154(a)(1). The doctrine of legal estoppel does not

negate this principle; "[i]nstead, it 'refers to a narrow category of conduct

encompassing scenarios where a patentee has licensed or assigned a right, received

consideration, and then sought to derogate from the right granted.'" Id. (quoting

TransCore, LP v. Elec. Transaction Consultants Corp., 563 F.3d 1271, 1279 (Fed. Cir. 2009)); see Winbond Elecs. Corp. v. Int'l Trade Comm'n, 262 F.3d 1363, 1375 (Fed. Cir. 2001), opinion corrected, 275 F.3d 1344 (Fed. Cir. 2001).  The patentee is estopped from taking back in any extent that for which the patentee has already received consideration.  Jacobs, 370 F.3d at 1101 (citing AMP Inc. v. United States, 389 F.2d 448, 453 (Ct. Cl. 1968)).

Defendants argue that the Agreement between LiTL and Licensee granted broad rights to the Asserted Patents without restrictions, including the right to sell or exploit the licensed patents in Licensee Products, and thus Defendants derived an unrestricted implied license from Licensee's express license.  Opening Br. Supp. Defs.' Mot. Summary J. Common Issues Def. HP Inc.'s Mot. Summary J. and Mot. Exclude Expert Testimony ("Defs.' Br.") at 6–8 (D.I. 298, 308).  Plaintiff argues that the Agreement includes three restrictions: (1) a prohibition on sublicenses; (2) a narrow license offered to Licensee's customers; and (3) an express disclaimer of implied licenses.  Pl. Opp. Defs. Mot. Summary J. Common Issues and HP's Mot. Summary J. and Mot. Exclude Expert Testimony ("Pl.'s Resp. Br."), at 8 (D.I. 318, 325).  These restrictions in the license do not exempt Defendants from meeting both implied license requirements under Met-Coil according to Plaintiff.  Id. at 6.

It is an undisputed fact that the Agreement grants Licensee a license to sell,

use, practice, or exploit the Asserted Patents in any Licensee Products in Section 4.1(a), followed by a provision granting Licensee's customers a license under certain conditions in Section 4.1(b).  Joint Statement at ¶ 13.  Section 4.1(b) is "[c]umulative with the rights conferred by Section 4.1(a)."  Id. at ¶ 14.  Defendants note that Section 4.1(b)'s introductory clause, "[c]umulative with" the rights conferred by the express license to Licensee, further supports the conclusion that Defendants have an implied license.  Defs.' Br. at 9.  Plaintiff argues that Defendants cannot prevail on an implied license defense because Defendants cannot show that the component that Licensee provides to Defendants has no non-infringing uses and that the circumstances of the sale plainly indicate a grant of a license.  Pl.'s Resp. Br. at 6.  Plaintiff identifies Defendants' "clamshell" or convertible laptops as a substantial non-infringing use and the licenses' three express restrictions as circumstances that do not "plainly indicate" an implied license.  Id. at 6–8.

The Court finds that the undisputed facts support a conclusion that the Agreement grants Licensee a broad express license under Section 4.1(a).  See Joint Statement at ¶ 13.  Licensee may "engage in any act relating to any [Licensee] Products that otherwise would be prohibited but for having a license under the Licensed Patents."  Id.  The restrictions in Section 4.1(b) are aimed at conditioning how Licensee's customers can sell, use, practice, or exploit Licensee products.

However, Section 4.1(b) does not place any conditions on Licensee's ability to sell, use, practice, and exploit the Licensed Patents in Licensee Products. The granting clause of Section 4.1(a) is large in the scope of activity that Licensee can engage in regarding the Asserted Patents, and the clause would be diminished if Plaintiff could interfere with Licensee's contractual right to sell Licensee Products to customers such as Defendants. See Jacobs, 370 F.3d at 1101 ("We agree with the district court that the clause granting Analog the right to sell its accelerometers for use in tilt-sensitive control boxes barred Jacobs from interfering with that right by prohibiting Analog's customers from using the accelerometers for that authorized purpose by making, using, and selling control boxes incorporating Analog's devices."). Licensee was authorized to sell Licensee Products to Defendants because the Agreement granted a broad express license to sell Licensee Products that would otherwise be prohibited but for the Agreement. See id. at 1100. Similar to the licensing agreement in Jacobs, Section 4.1(a) granted Licensee an affirmative right to engage in any act relating to any Licensee products, such as the sale of Licensee products, that would otherwise infringe the Asserted Patents notwithstanding the Agreement, and the Court holds that Section 4.1(a) grants these rights without restriction. See id. at 1101.

Plaintiff argues that Section 4.1(a) grants a license to Licensee that is "non-sublicensable," the subject of a license to Licensee's customers is already covered

in Section 4.1(b), Section 6.18 contains an integration clause, and an express disclaimer precludes an implied license.  Pl.'s Resp Br. at 8–11.  Implied licenses can develop from a range of conduct beyond a formal sublicense, specifically through the doctrine of legal estoppel.  See Wang Lab'ys, Inc., 103 F.3d at 1580.  Plaintiff is accusing Defendants' products of infringement, and Defendants' products use Licensee Products—products that Licensee has a license to freely sell according to Section 4.1(a) of the Agreement.  First Am. Compl. (D.I. 20); Joint Statement at ¶ 18.  Section 4.1(b) imposes no restrictions on Licensee's ability to sell, thus supporting the conclusion that interfering with Licensee's right that Plaintiff received consideration for would violate contract principles.  See MiiCs & Partners Am., Inc. v. Toshiba Corp., 274 F. Supp. 3d 247, 251 (D. Del. 2017), aff'd, 748 F. App'x 1026 (Fed. Cir. 2019) (stating that if purchasers were sued for infringement for items purchased from a licensed supplier, "[o]n those facts alone, these would be easy motions to dispose of.  Funai and Toshiba would have, at least an implied sublicense, see [Jacobs]), and, alternatively, Plaintiffs would have exhausted their patent rights."); Joint Statement at ¶ 10 (stating that Licensee agreed to pay Plaintiff a one-time lump-sum payment).

Additionally, Section 4.1(b) of the Agreement is to be read "[c]umulative with the rights conferred by Section 4.1(a)."  Joint Statement at ¶ 14.  "Contract interpretation is a question of law."  Lionra Techs. Ltd. v. Cisco Sys., Inc., No.

Page 14

2024-2153, 2026 WL 160572, at *2 (Fed. Cir. Jan. 21, 2026) (citation omitted).

Washington law governs the interpretation of contract terms within the Agreement, and words in a contract are generally given their ordinary, usual, and popular meaning. Joint Statement at ¶ 17; see Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wash. 2d 493, 504 (2005). "Cumulative" indicates that the rights given in Section 4.1(b) should not be read separately from Section 4.1(a). In accordance with the basic contract law principle that a party may not assign a right, receive consideration for it, and proceed to take steps to rid the right of its commercial worth, the Court concludes that Section 4.1(a) of the Agreement granted Licensee the broad right to sell its products, and that broad right bars Plaintiff from interfering with that right by prohibiting Licensee's customers from using Licensee's products. See Jacobs, 370 F.3d at 1101. The Court concludes that the Agreement granted Licensee's customers an implied license to sell, use, practice, or exploit the Licensed Patents through any Licensee Products and engage in any act relating to any Licensee Products that otherwise would be prohibited but for the Agreement. Thus, because Defendants, as Licensee customers, derived an implied license from the express license between LiTL and Licensee, the requirement of demonstrating that there is no non-infringing use for Defendants' products does not apply in the context of the facts of this case. See Joint Statement at ¶ 18; Jacobs, 370 F.3d at 1100, 1101 ("Furthermore, as the district court noted, it is unlikely that

Analog would have contracted for the right to manufacture and sell a product knowing that its customers would be unable to use the product that it sold them for the bargained-for purpose.")

## B.      Circumstances of the Sale

Next, to find an implied license, the circumstances of the sale must plainly indicate that the grant of a license should be inferred.  Anton/Bauer, Inc., 329 F.3d at 1350.  Plaintiff identifies the same restrictions mentioned above as evidence of circumstances that do not plainly indicate the grant of a license.  Pl.'s Resp. Br. at 8.  Defendants again raise the fact that the Agreement grants a broad license to sell, use, practice, and exploit the licensed patents in any Licensee Products as evidence of circumstances that support an inference of a grant of a license, and compares these facts to those in Zenith.  Defs.' Br. at 6–7.  In Zenith, the CAFC found that no restrictions were placed on license agreements that offered broad grants of patent rights and affirmed a district court's grant of summary judgment of non-infringement due to the existence of an implied license.  522 F.3d at 1362.  The Agreement does not require that Licensee place a notice on all products notifying customers that there is no implied license, which the CAFC has found previously to be a circumstance that did not plainly indicate the grant of a license.  Monsanto Co. v. Scruggs, 459 F.3d 1328, 1336 (Fed. Cir. 2006).  The Agreement places no restrictions on Licensee's ability to sell its products and Defendants' accused

products use Licensee Products.  Joint Statement at ¶¶ 13, 18.  The Court concludes that the circumstances of the sale plainly indicate that the grant of a license should be inferred.  Because the Court has concluded that Defendants have an implied license to sell, use, practice, or exploit the Licensed Patents through any of Licensee Products and engage in any act relating to any of Licensee Products that otherwise would be prohibited but for the Agreement, there can be no direct infringement of the Asserted Patents based on the accused products' use of Licensee Products.  Met-Coil, 803 F.2d at 687 (affirming the district court's holding that neither direct nor induced infringement could be established when customers enjoyed an implied license to practice the claimed inventions in a patent).  The Court concludes that Defendants similarly enjoyed an implied license to practice the claimed inventions through Licensee's Products and Defendants are entitled to summary judgment of noninfringement of the Asserted Patents as a matter of law.

Defendants' Motion for Summary Judgment on Common Issues is granted in part as to judgment as a matter of law on the issue of the implied license defense to infringement and denied in part as moot as to the other grounds raised for summary judgment.  The remaining motions for summary judgment and motions to exclude expert testimony are denied as moot.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment on Common Issues and Defendant HP Inc.'s Motion for Summary Judgment and Motion to Exclude Expert Testimony (D.I. 297) is granted in part and denied in part; and it is further

**ORDERED** that Plaintiff's Motion for Summary Judgment and Daubert Motions Regarding Issues Common to Defendants (D.I. 299) is denied as moot; and it is further

**ORDERED** that Plaintiff's Daubert Motion to Exclude Testimony of Julia Rowe Regarding Settlement Agreements and Offers (D.I. 303) is denied as moot; and it is further

**ORDERED** that the Parties shall meet and confer and, if there are no pending issues for trial, file a proposed judgment on or before July 7, 2026.

IT IS SO ORDERED this 30th day of June, 2026.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

---

*Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.