IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGENCO HOLDINGS, LLC and BIO-ENERGY (WASHINGTON), LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 26-432-JLH |
| WASTE MANAGEMENT, INC. and WM RENEWABLE ENERGY, L.L.C., | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
<u>UNDER FED. R. CIV. P. 12(b)(6)</u>**

<div style="display: flex;">

OF COUNSEL:
Robert J. Rauch
LAW OFFICES OF ROBERT J. RAUCH
25141 Star View Road
Mt. Vernon, Washington 98273
(360) 708-7296

Larry D. Moffett
LAW OFFICE OF LARRY D. MOFFETT PLLC
39 County Road 231
Oxford, MS 38655
(662) 298-4435

Dated: July 6, 2026

</div>

Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.   NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

II.   SUMMARY OF ARGUMENT ........................................................................................... 1

III.   STATEMENT OF FACTS ................................................................................................. 3

   A.   The '779 Patent and the Two-Tier License Structure. ........................................... 3

   B.   The Label Licenses Reserve Project-Wide Rights Exclusively to BEW. ............................ 3

   C.   The Accused Project-Wide Recycle Configuration. ............................................... 4

   D.   BEW's Bargained-For Inspection Right and Defendants' Refusal to Honor It.................... 4

   E.   WMI's Direction and Control. ............................................................................ 5

IV.   LEGAL STANDARD .................................................................................................... 5

V.   ARGUMENT ................................................................................................................. 6

   A.   Defendants' Affirmative Defenses Cannot Be Resolved on the Pleadings. ........................ 6

   B.   The Label Licenses Do Not License the Accused Project-Wide Configuration.................. 7

   C.   Plaintiffs' Patent Rights Are Not Exhausted. ........................................................... 9

      1.   The Covered Products Do Not Substantially Embody the '779 Methods. ....................... 9

      2.   There Was No Authorized Sale of the Reserved Project-Wide Rights. ........................... 9

   D.   Equitable Estoppel Cannot Be Decided on the Pleadings.............................................. 10

   E.   The Complaint Plausibly States Claims for Infringement and Breach of Contract. .......... 12

      1.   Patent Infringement........................................................................................... 12

      2.   Breach of Contract. ........................................................................................... 13

   F.   The Claims Against WMI Should Not Be Dismissed; Alternatively, Leave to Amend
Should Be Granted.................................................................................................... 15

VI.   CONCLUSION................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992)............................................................... 6, 10, 11

*Anton/Bauer, Inc. v. PAG, Ltd.*,
   329 F.3d 1343 (Fed. Cir. 2003)....................................................................... 8, 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................... 5

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ...................................................................... 6, 12

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*,
   72 F.3d 872 (Fed. Cir. 1995)............................................................................ 6

*Coker v. Coker*,
   650 S.W.2d 391 (Tex. 1983)........................................................................ 7, 8

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d Cir. 2016)............................................................................. 5

*Dark Pulse, Inc. v. FirstFire Global Opportunities Fund, LLC*, C.A. No. 24-746-JLH,
   2025 WL 2781702 (D. Del. September 30, 2025)........................................... 5

*DermaFocus LLC v. Ulthera, Inc.*,
   201 F. Supp. 3d 465 (D. Del. 2016) ............................................................. 12

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
   888 F.3d 1256 (Fed. Cir. 2018)................................................................... 6, 12

*DSM IP Assets, B.V. v. Honeywell, Inter., Inc.*,
   700 F. Supp. 3d 189 (D. Del. 2023).............................................................. 12

*Erickson v. Pardus*,
   551 U.S. 89 (2007)........................................................................................... 6

*Foman v. Davis*,
   371 U.S. 178 (1962)........................................................................................ 16

*Fraunhofer-Gesellschaft v. Sirius XM Radio Inc.*,
   138 F.4th 1371 (Fed. Cir. 2025) .................................................................... 10

*Fraunhofer-Gesellschaft Zur Förderung Der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, C.A. No. 17-184, 2026 WL 809939 (D. Del. Mar. 24, 2026)............... 10

*Gen. Talking Pictures Corp. v. W. Elec. Co.*,
304 U.S. 175 (1938), *aff'd on reh'g*, 305 U.S. 124 (1938)....................................... 10

*Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. ___, 146 S.Ct. 1391 (2026)...................................................................... 15

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
581 U.S. 360 (2017)................................................................................................ 10

*Intel Corp. v. Broadcom Corp.*,
173 F. Supp. 2d 201 (D. Del. 2001) ......................................................................... 8

*Keurig, Inc. v. Sturm Foods, Inc.*,
732 F.3d 1370 (Fed. Cir. 2013)................................................................................ 6

*K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*,
714 F.3d 1277 (Fed. Cir. 2013)............................................................................... 12

*Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*,
13 F.3d 69 (3d Cir. 1993)........................................................................................ 14

*McCoy v. Mitsuboshi Cutlery, Inc.*,
67 F.3d 917 (Fed. Cir. 1995).............................................................................. 6, 7

*McDermott v. Clondalkin Grp., Inc.*,
649 F. App'x 263 (3d Cir. 2016) ............................................................................ 12

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)............................................................................... 12

*Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*,
574 S.W.3d 882 (Tex. 2019).................................................................................... 13

*Qualcomm Inc. v. Apple Inc.*, No. 17c1375 DMS,
2019 WL 448278 (S.D. Cal. Feb. 5, 2019) .............................................................. 6

*Quanta Comp., Inc. v. LG Elecs., Inc.*,
553 U.S. 617 (2008)................................................................................................. 9

*Rice v. Metro. Life Ins. Co.*,
324 S.W.3d 660 (Tex. App.—Fort Worth 2010, no pet.)....................................... 7, 8

*SCA Hygiene Prods. Aktibolag v. First Quality Baby Prods., LLC*,
580 U.S. 328 (2017)................................................................................................. 6

iii

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)...................................................................... 5, 6, 11, 14

*Strikeforce Techs., Inc. v. Phonefactor, Inc.*, C.A. No. 13-490-RGA-MPT,
    2013 U.S. Dist. LEXIS 161560 (D. Del. Nov. 13, 2013) ........................................ 11

*Tenneco Inc. v. Enter. Prods. Co.*,
    925 S.W.2d 640 (Tex. 1996).............................................................................. 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................ 5

*United States v. Univis Lens Co.*,
    316 U.S. 241 (1942)........................................................................................ 9

*United States v. Bestfoods*,
    524 U.S. 51 (1998)........................................................................................ 15

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................. passim

Fed. R. Civ. P. 15(a) ........................................................................................ 16

Fed. R. Civ. P. 15(a)(2)............................................................................... 13, 16

Fed. R. Civ. P. 17(a)(3)................................................................................... 14

Fed. R. Civ. P. 25(c) ...................................................................................... 14

## I.  NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Ingenco Holdings, LLC ("Ingenco") and Bio-Energy (Washington), LLC ("BEW") filed this action on April 15, 2026, asserting two claims: (i) Ingenco's claim for infringement of U.S. Patent No. 7,731,779 (the "'779 Patent"); and (ii) BEW's claim, as an express third-party beneficiary, for breach of the Label License Agreements through Defendants' unlicensed, project-wide practice of the patented methods. Defendants Waste Management, Inc. ("WMI") and WM Renewable Energy, LLC ("WMRE") move under Rule 12(b)(6) to dismiss both claims against both Defendants. This is Plaintiffs' answering brief in opposition.

## II.  SUMMARY OF ARGUMENT

1.      Defendants' motion rests on three affirmative defenses—license, patent exhaustion, and equitable estoppel—on which Defendants bear the burden of proof. Such defenses may be resolved on a Rule 12(b)(6) motion only where every fact necessary to establish them appears on the face of the Complaint and the exhibits it incorporates. None does. Each defense turns on disputed facts and contract construction that cannot be resolved on the pleadings, where the Court must accept Plaintiffs' well-pleaded allegations as true and draw all reasonable inferences in Plaintiffs' favor.

2.      The license defense fails because the Label Licenses do not authorize the accused conduct. By their terms, the Label Licenses grant only the right to practice the '779 methods "in connection with" use of Air Liquide's Covered Products, and expressly reserve to BEW the practice of the Licensed Methods "with respect to the Project as a whole" and the use of "other equipment" the operator incorporates into the Project—providing that "a Project wide license may only be obtained from BEW." The Complaint plausibly alleges that Defendants practice the Licensed Methods on a project-wide basis, incorporating equipment, processes, and methods

1

beyond the covered Air Liquide products—precisely the conduct Article 2.01 reserves to BEW. At a minimum, the scope of the Label Licenses is a question of Texas contract construction that cannot be resolved against Plaintiffs on the pleadings.

3.      Exhaustion fails for two independent, fact-bound reasons. First, the Covered Products do not substantially embody the '779 methods, because, as alleged, the project-wide practice depends on equipment, processes, and methods beyond the Air Liquide Covered Products as delivered. Second, even if the Covered Products embodied the methods, there was no authorized sale of the reserved project-wide rights: a sale outside the scope of a licensee's authority is "not under the patent" and does not exhaust it.

4.      Equitable estoppel is a fact-intensive defense that—as Defendants' own lead authority confirms—is resolved on a developed evidentiary record, not on the pleadings. None of its three elements appears on the face of the Complaint, and Defendants' argument depends on extrinsic materials that may not be considered on a Rule 12(b)(6) motion.

5.      The Complaint plausibly pleads both claims. It identifies the patent, the accused sites, the accused activity, and the contractual provision breached. No element-by-element analysis is required; fair notice suffices. Defendants' notice argument is also irreconcilable with their license and exhaustion arguments, both of which presuppose that WMRE practices the '779 methods.

6.      The claims against WMI should not be dismissed. The Complaint alleges that WMI directs and controls WMRE's RNG operations, including the Infringing Projects, and induces infringement with actual knowledge of the '779 Patent and of the infringement—allegations that, taken as true, plausibly support liability and, at minimum, warrant leave to amend rather than dismissal with prejudice.

## III. STATEMENT OF FACTS

### A. The '779 Patent and the Two-Tier License Structure.

Ingenco Holdings owns the '779 Patent, having taken assignment from BEW in March 2023. (D.I. 1 ¶¶ 2, 14; Ex. A.) The patent claims methods for purifying landfill gas into pipeline-quality renewable natural gas ("RNG"), including a step in which the membrane permeate is recycled to improve methane recovery. (*Id.* ¶ 15.) BEW holds the 2012 Air Liquide License Agreement as licensor and is the named third-party beneficiary of the Label Licenses issued under it. (*Id.* ¶¶ 3, 13, 14, 16; Ex. C.)[1] The licensing structure is two-tier: a product-tied Label License covering the purchaser's use of Air Liquide's "Covered Products," and a separate, project-wide license—obtainable only from BEW—covering practice of the Licensed Methods at the project level. (*Id.* ¶¶ 16–19; Ex. D, Arts. 1.01, 2.01.) For each Label License, Air Liquide covenants to make a comparable payment to BEW. (*Id.*, Ex. D, Art. 2.03.)

### B. The Label Licenses Reserve Project-Wide Rights Exclusively to BEW.

Each Label License grants WMRE the right to practice the patented methods "in connection with" its "use of the Covered Product(s) in its Project." (D.I. 1, Ex. D, Art. 2.01.) Article 2.01 then withholds, among other things, (i) practice of the Licensed Methods "with respect to the Project as a whole" and (ii) use of "other equipment that [WMRE] may incorporate into the Project," and provides that "a Project wide license may only be obtained from BEW." (*Id.*) Article 1.01 confirms that BEW "owns any and all right, title and interest in and to the Patent Rights and

---

[1]After the Complaint was filed, and as authorized by Section 8.10 of the License Agreement, BEW assigned the License Agreement and its third-party-beneficiary rights in the Label Licenses to Ingenco Holdings, effective May 27, 2026, consolidating the patent and contract rights in a single entity. That post-filing transfer of interest is governed by Fed. R. Civ. P. 25(c) and provides no basis for dismissal; Plaintiffs will substitute or join Ingenco Holdings as the Court directs. *See infra* Part V.E.2.

Licensed Methods" and that the instrument "is (i) a project specific license, [and] (ii) covers only the Covered Products incorporated into the Project." (*Id.*, Art. 1.01.) The Complaint pleads these same reservations. (*Id.* ¶ 18.) The Label Licenses are governed by Texas law. (*Id.*, Art. 4.01.)

### C.   The Accused Project-Wide Recycle Configuration.

The patented method includes a project-wide step in which membrane permeate is recycled to improve methane recovery. (D.I. 1 ¶¶ 15, 23.) The Complaint alleges that WMRE's sixteen facilities each practice the patented methods (*id.* ¶¶ 21–23), and that Defendants' operation of each Project "incorporate[s] equipment, processes, and methods beyond the scope of the covered Air Liquide products identified in the applicable Label License," constituting "project-wide practice of the Licensed Methods for which [WMRE] must obtain authorization from BEW or Ingenco Holdings." (*Id.* ¶ 43.) WMRE has not obtained a project-wide license from BEW for any Project. (*Id.* ¶¶ 20, 43.)

### D.   BEW's Bargained-For Inspection Right and Defendants' Refusal to Honor It.

Article 3.02 of each Label License confers on BEW, as an express third-party beneficiary, the right "to inspect the Project upon reasonable notice" to confirm compliance with the agreement. (D.I. 1 ¶¶ 18, 40; Ex. D, Art. 3.02.) On March 25, 2026, BEW exercised that right by serving Defendants with a written Inspection Notice invoking Article 3, which identified all sixteen Projects, specified categories of records to be produced for each, requested a knowledgeable representative for each Project, and directed a response by April 14, 2026. (*Id.* ¶ 27; Ex. F.) As of the filing of the Complaint, Defendants had neither responded to, nor complied with, the Inspection Notice. (*Id.* ¶¶ 29, 44.) The detailed configuration records that would document each Project's project-wide practice of the Licensed Methods thus remain in the possession of Defendants and their equipment supplier, unproduced.

4

### E. WMI's Direction and Control.

The Complaint alleges that WMI "is the parent company of WM Renewable Energy, L.L.C. and … exercises direction and control over WM Renewable Energy's RNG operations, including each of the Infringing Projects described herein" (D.I. 1 ¶ 4), and that WMI "has induced and continues to induce infringement … by directing, controlling, authorizing, and facilitating the infringing activities of WM Renewable Energy at the Infringing Projects, with actual knowledge of the '779 Patent and knowledge that WM Renewable Energy's activities constitute infringement" (*id.* ¶ 34; see also *id.* ¶ 25).

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a), a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion to dismiss for failure to state a claim, "the court must 'disregard[ ] a pleading's legal conclusions,' then 'assume all remaining factual allegations to be true, construe those truths in the light most favorable to the Plaintiff, and then draw all reasonable inferences from them.'" *Dark Pulse, Inc. v. FirstFire Global Opportunities Fund, LLC*, C.A. No. 24-746-JLH, 2025 WL 2781702, at *1 (D. Del. September 30, 2025) (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016)). On a 12(b)(6) motion, the Court may also consider exhibits to the complaint, documents integral to or relied upon expressly in the complaint, and matters subject to judicial notice; but the Court may not consider and weigh extrinsic facts. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Dismissal on the basis of an affirmative defense is appropriate only where the defense "is established on the face of the complaint." *Id.* at 249. License, exhaustion, and equitable estoppel

are affirmative defenses on which Defendants bear the burden. *See McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) *abrogated on other grounds, SCA Hygiene Prods. Aktibolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017); *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373 (Fed. Cir. 2013) ("Patent exhaustion is an affirmative defense to a claim of patent infringement"); *Qualcomm Inc. v. Apple Inc.*, No. 17c1375 DMS, 2019 WL 448278, at \*1 (S.D. Cal. Feb. 5, 2019) (party asserting patent exhaustion "bears the burden of proving the elements of that defense"). *See also Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995) (alleged infringer bears the burden of establishing an implied license as an affirmative defense).

In a patent case, "[s]pecific facts are not necessary" to survive a motion to dismiss; the complaint need only give "fair notice of what the … claim is and the ground upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Further, a plaintiff "is not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.,* 4 F.4th 1342, 1352 (Fed. Cir. 2021).

## V.  ARGUMENT

### A.  Defendants' Affirmative Defenses Cannot Be Resolved on the Pleadings.

License, exhaustion, and equitable estoppel are affirmative defenses for which Defendants carry the burden of proof. *McCoy*, 67 F.3d at 920 ("Whether express or implied, a license is a contract" that the licensee must prove); *Aukerman*, 960 F.2d at 1028. A Rule 12(b)(6) motion tests the sufficiency of the Complaint—not the merits of a defense—and an affirmative defense supports dismissal only when it is "apparent on the face of the complaint." *Schmidt*, 770 F.3d at 249. Each

defense Defendants raise depends on facts the Complaint does not establish and, read in the light most favorable to Plaintiffs, affirmatively disputes: the scope of the Label Licenses, whether the Covered Products substantially embody the project-wide methods, and whether Defendants relied on any silence by Plaintiffs. Those are quintessential summary-judgment questions to be resolved after discovery, not on the pleadings. For this threshold reason, the motion should be denied, with the defenses preserved.

### B.   The Label Licenses Do Not License the Accused Project-Wide Configuration.

A patent license is a contract construed under state law—here, Texas. *McCoy*, 67 F.3d at 920. Under Texas law, courts "give effect to *all the provisions* of the contract so that none will be rendered meaningless," *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original), and "will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). In addition, under Texas law, a court may not change or modify a contract by implying terms that contradict express language of the contract. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 669 (Tex. App.—Fort Worth 2010, no pet.).

Measured against those principles, the Label Licenses do not authorize the accused conduct. They grant a bounded, product-tied right—practice of the methods "in connection with" use of the Covered Products—and expressly reserve to BEW the practice of the Licensed Methods "with respect to the Project as a whole" and the use of "other equipment that [WMRE] may incorporate into the Project," stating that "a Project wide license may only be obtained from BEW." (D.I. 1, Ex. D, Arts. 1.01, 2.01; *see id.* ¶ 18.) The Complaint alleges that Defendants practice the Licensed Methods on a project-wide basis, "incorporat[ing] equipment, processes, and methods beyond the scope of the covered Air Liquide products," without the project-wide license

7

BEW must grant. (*Id.* ¶¶ 18, 43.) Accepting those allegations as true, the accused activity falls squarely within the rights Article 2.01 reserves to BEW—and outside the rights the Label Licenses convey.

Notably, the very exhibits on which Defendants rely defeat their defense. Defendants contend that the Label Licenses (Ex. D) "confirm" a complete license. But those same instruments contain the reservations that carve the accused project-wide configuration out of the grant. Defendants' contrary reading—that a product-tied label license silently conveys plant-wide method rights—would read the Article 2.01 reservations and the "Project wide license may only be obtained from BEW" clause out of the contract entirely, contrary to *Coker* and *Tenneco.* At a minimum, the scope of the grant is a disputed question of contract construction that cannot be resolved against Plaintiffs on the pleadings.

The implied-license theory fails for the same reasons and is independently fact-bound. The implied license advocated by Defendants contradicts the express provisions of the label license and, therefore, does not exist/cannot be imposed. *See Rice*, *supra*, 324 S.W.3d at 669 (court may not imply terms that contradict or change express contract language). Further, an implied license arises only from an *unrestricted* sale of an article having no non-infringing use, under circumstances that "plainly indicate" a license should be inferred. *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003). Here the governing instruments are expressly restricted and reserve the project-wide right, so no broader license may be implied. *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201 (D. Del. 2001) ("where an agreement contains a specific provision expressly defining the scope of the patent license implied licenses dealing with the same subject matter are not generally recognized"). And whether the "circumstances of the sale plainly indicate"

8

a license, *Anton/Bauer*, 329 F.3d at 1350, is a factual inquiry unsuited to resolution on a Rule 12(b)(6) motion.

### C. Plaintiffs' Patent Rights Are Not Exhausted.

Exhaustion attaches only upon an authorized sale of an article that has no reasonable non-infringing use and substantially embodies the patent's essential features. *Quanta Comp., Inc. v. LG Elecs., Inc.,* 553 U.S. 617, 631, 633 (2008); *United States v. Univis Lens Co.*, 316 U.S. 241, 249–51 (1942). Neither requirement is satisfied on the face of this Complaint, and each presents a factual question.

#### 1. The Covered Products Do Not Substantially Embody the '779 Methods.

The "Covered Products" for a given Label License are identified in the exhibits to the Label License and include only those identified Products sold by Air Liquide to the Licensee; the Complaint alleges that the patented methods are practiced on a project-wide basis using "equipment, processes, and methods beyond the scope of the covered Air Liquide products." (D.I. 1 ¶¶ 18, 43.) Under *Quanta,* an incomplete article substantially embodies a patent only where "the only step necessary to practice the patent is the application of common processes or the addition of standard parts." 553 U.S. at 633. Whether the Covered Products alone substantially embody the project-wide methods—or whether, as alleged, that practice depends on additional equipment beyond the Covered Products—is a quintessential factual question that the Complaint, read in Plaintiffs' favor, answers against Defendants.

#### 2. There Was No Authorized Sale of the Reserved Project-Wide Rights.

Even if the Covered Products embodied the methods, exhaustion would still fail because Air Liquide's authority to convey rights was bounded by its license, which reserved project-wide method rights to BEW. A sale outside the scope of a licensee's authority is "not under the patent"

9

and does not exhaust it. *Gen. Talking Pictures Corp. v. W. Elec. Co.*, 304 U.S. 175, 181–82 (1938), *aff'd on reh'g*, 305 U.S. 124, 125 (1938). *Impression Products* is not to the contrary: a licensee's sale exhausts only when it is *authorized*—that is, within the scope of the license. *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 376 (2017). Whether Air Liquide's sales of the Covered Products fell within or outside the scope of its bounded authority is a factual and contract-construction question that cannot be resolved on the pleadings. Because exhaustion turns on disputed facts, it cannot support dismissal.

### D. Equitable Estoppel Cannot Be Decided on the Pleadings.

Equitable estoppel requires three fact-intensive elements: (1) misleading conduct by the patentee leading the accused infringer reasonably to infer the patentee will not assert its patent; (2) reliance on that conduct; and (3) material prejudice. *Aukerman*, 960 F.2d at 1028. The defense is "committed to the sound discretion of the trial" court, *id.*, and must be resolved on a developed record.

Defendants' own lead authority proves the point. In *Fraunhofer-Gesellschaft v. Sirius XM Radio Inc.*, the Federal Circuit **reversed** summary judgment on equitable estoppel because reliance presented a genuine factual dispute, holding that reliance requires the accused infringer to show it actually considered the patentee's silence and that the silence influenced its decision—not a mere post hoc rationalization of business choices. 138 F.4th 1371, 1380–82 (Fed. Cir. 2025). The district court resolved that element only after a **bench trial** on remand. C.A. No. 17-184, 2026 WL 809939, at *10 (D. Del. Mar. 24, 2026). If estoppel could not be decided on a full summary-judgment record in *Fraunhofer,* it surely cannot be decided on the bare pleading here.

None of the three elements appears on the face of this Complaint. As to misleading conduct, even on Defendants' own premise that Air Liquide made a comparable payment to BEW for each

10

Label License (Ex. D, Art. 2.03), that shows, at most, that Plaintiffs knew WMRE took *product-tied* Label Licenses—not that Plaintiffs knew WMRE was practicing the *unlicensed project-wide* configuration now at issue. Silence will not create an estoppel "unless there was a clear duty to speak … or somehow the patentee's continued silence reenforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested," and such an inference "must be the *only* possible inference from the evidence." *Aukerman*, 960 F.2d at 1043–44 (emphasis in original). These are clearly fact-intensive inquiries incapable of resolution at the pleadings stage.  Likewise, as to reliance, nothing on the face of the Complaint establishes that WMRE actually considered any silence by Plaintiffs in deciding to build the accused configuration; *Fraunhofer* forecloses inferring reliance from investment alone. And prejudice depends on reliance and on investment facts found nowhere in the Complaint.

Defendants' estoppel argument depends entirely on extrinsic materials—including a trade-magazine article and unpleaded assertions about the scale and timing of WMRE's investments—that may not be considered on a Rule 12(b)(6) motion. *Schmidt*, 770 F.3d at 249; *Strikeforce Techs., Inc. v. Phonefactor, Inc.*, C.A. No. 13-490-RGA-MPT, 2013 U.S. Dist. LEXIS 161560, at *7-8 (D. Del. Nov. 13, 2013) (court ruling on a motion to dismiss may only consider documents integral to or explicitly relied upon in the complaint; once the court relies on extrinsic evidence it goes beyond the four corners of the complaint and is improperly analyzing the merits). Because equitable estoppel is quintessentially fact-bound and is not established on the face of the Complaint, it cannot support dismissal.

11

**E.    The Complaint Plausibly States Claims for Infringement and Breach of Contract.**

**1.    Patent Infringement.**

The Complaint readily satisfies the governing standard. "[S]pecific facts are not necessary"; fair notice suffices; and no element-by-element analysis is required. *Disc Disease*, 888 F.3d at 1258, 1260 (reversing Rule 12(b)(6) dismissal); *Bot M8*, 4 F.4th at 1352. *See also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (complaint must provide "notice of what activity … is being accused of infringement") (quoting *K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)). The Complaint identifies the '779 Patent, the sixteen accused sites, and the accused activity—project-wide practice of the Licensed Methods without the BEW license that Article 2.01 requires—and it recites the patented method steps it accuses at each site, including the membrane-permeate recycle. (D.I. 1 ¶¶ 21–24, 43; *see id.* ¶¶ 15, 23.) That is well more than fair notice.

To the extent Defendants fault the Complaint for not pleading more granular detail about the internal configuration of their own facilities, that argument fails for an independent reason: such detail is peculiarly within Defendants' possession and control. The Third Circuit permits pleading on information and belief "where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *DSM IP Assets, B.V. v. Honeywell, Inter., Inc.*, 700 F. Supp. 3d 189, 198 (D. Del. 2023) (quoting *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016)). That principle has particular force in patent cases, where "it is logical to presume that a defendant has greater access to, and therefore, more information [than the plaintiff] about its accused method." *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 469 (D. Del. 2016). The '779 claims recite methods practiced inside Defendants' plants; the precise plant-level configuration of those methods is uniquely in Defendants' hands.

12

Here the information asymmetry is, moreover, of Defendants' own making. BEW bargained for a contractual right to inspect each Project (Ex. D, Art. 3.02) precisely so that it could confirm the configuration at issue—and Defendants neither responded to nor honored it. Had Defendants permitted the inspection BEW noticed on March 25, 2026 (D.I. 1 ¶ 27; Ex. F), BEW would have obtained the detailed process information Defendants now say is missing, and could have pleaded it. A defendant may not withhold the very information that would permit more specific pleading—here, by breaching the inspection right designed to produce it—and then demand that specificity as the price of avoiding dismissal. The Complaint already provides fair notice; the law requires nothing more at the pleading stage.

Defendants' demand for greater specificity is also irreconcilable with the rest of their motion. Their license and exhaustion arguments presuppose that WMRE *is* practicing the '779 methods; Defendants cannot simultaneously contend that the Complaint fails to allege that WMRE practices them. To the extent the Court concludes any allegation should be more specific, the remedy is leave to amend—not dismissal with prejudice. *See* Fed. R. Civ. P. 15(a)(2).

## 2. Breach of Contract.

The Complaint pleads each element of a Texas breach-of-contract claim that Defendants themselves recite: a valid contract, performance by the plaintiff, breach, and resulting damages. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (pleading requirements for breach of contract claim). Each Label License is a valid Texas-law contract under which BEW is expressly named as a third-party beneficiary with the exclusive right to issue project-wide licenses (Art. 2.01) and inspection rights (Art. 3.02). (D.I. 1 ¶¶ 40, 42.) At the time the Complaint was filed, BEW held the License Agreement and those third-party-beneficiary rights, and was therefore the real party in interest for Count II. (*Id.* ¶¶ 3, 13, 14, 16.)

13

Defendants' suggestion (Op. Br. 5 n.3) that BEW lacks rights because of the March 2023 patent assignment is mistaken: that assignment conveyed only patent-enforcement rights under § 271 and did not diminish BEW's separate contractual position as a named third-party beneficiary. (*Id.* ¶¶ 14, 41.) BEW performed; WMRE breached by practicing the Licensed Methods on a project-wide basis without obtaining the project-wide license that Article 2.01 reserves exclusively to BEW; and BEW was damaged. (*Id.* ¶¶ 42–43, 45.) Article 2.01 itself supplies the meaning of the "project-wide" license that Defendants say is undefined: it is the license the agreement that says "may only be obtained from BEW." That is sufficient notice; any further detail is a matter for discovery, not dismissal.

Nor does BEW's post-filing assignment of the License Agreement change the analysis. Effective May 27, 2026—after this suit was filed—BEW assigned the License Agreement and its third-party-beneficiary rights to Ingenco Holdings, consolidating the patent and contract rights in a single entity. A transfer of interest after suit is filed is governed by Rule 25(c), under which "the action may be continued by or against the original party" unless the court, in its discretion, orders the transferee substituted or joined. Fed. R. Civ. P. 25(c); *see Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71–72 (3d Cir. 1993) (district court's discretion). Such a transfer does not divest the Court of jurisdiction, does not affect the sufficiency of the Complaint, and is no basis for dismissal. Indeed, Rule 17(a)(3) forbids dismissal on real-party-in-interest grounds "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). Plaintiffs will substitute or join Ingenco Holdings as the Court directs. In all events, a post-filing assignment is extrinsic to the Complaint and not properly considered on this Rule 12(b)(6) motion. *See Schmidt*, 770 F.3d at 249 (extrinsic document not integral to or relied upon in complaint may not be considered).

Defendants' refusal to honor BEW's inspection right is, moreover, an independent and already-accrued breach of the Label License Agreements. Article 3.02 grants BEW, as an express third-party beneficiary, a bargained-for right to inspect each Project upon reasonable notice to confirm compliance. (D.I. 1 ¶¶ 18, 40; Ex. D, Art. 3.02.) BEW exercised that right through its March 25, 2026 Inspection Notice, and Defendants neither responded nor complied. (*Id.* ¶¶ 27, 29, 44; Ex. F.) That refusal is itself a breach of BEW's bargained-for rights and supports the equitable relief Count II seeks. (*Id.* ¶ 47 & Prayer for Relief ¶ I.) And because Defendants' refusal deprived BEW of the very configuration information the inspection was designed to produce, Defendants cannot be heard to complain that the Complaint lacks that detail. *See supra*, Part V.E.1.

### F.    The Claims Against WMI Should Not Be Dismissed; Alternatively, Leave to Amend Should Be Granted.

The Complaint does not rest on WMI's status as a parent alone. It alleges that WMI "exercises direction and control over WM Renewable Energy's RNG operations, including each of the Infringing Projects," and that WMI directs, controls, authorizes, and facilitates WMRE's infringing activities with actual knowledge of the '779 Patent and of the infringement. (D.I. 1 ¶¶ 4, 25, 34.) *Bestfoods* bars *automatic* parent liability, but it does not bar liability where, as alleged here, the parent directs and controls the accused operations. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (corporate veil of parent may be pierced).[2]

Defendants' reliance on *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. ___, 146 S.Ct. 1391 (2026), only underscores that the inducement claim is well-pleaded. *Hikma* requires a plaintiff to plausibly allege that the defendant *actively encouraged* infringement,

---

[2] WMI's direction and control is validated by the extrinsic materials it (improperly) cites at page 4 of its Brief. See https://www.wastetodaymagazine.com/news/wm-invests-825-millioninto-renewable-natural-gas ("WM has 16 plants across North Americas through a mix of WM plants and third-party developers.").

with knowledge. 146 S.Ct. at 1397-98. The Complaint alleges each element: that WMI knew of the '779 Patent (D.I. 1 ¶¶ 25, 34); that WMI knew WMRE's activities constitute infringement (*id.* ¶ 34); and that WMI took active steps to bring about that infringement by "directing, controlling, authorizing, and facilitating" WMRE's activities at the Infringing Projects (*id.* ¶¶ 4, 34). Taken as true, those allegations plausibly state a claim for induced infringement.

In all events, any perceived deficiency as to WMI should be cured by amendment rather than dismissal with prejudice. Leave to amend is to be "freely give[n] … when justice so requires." Fed. R. Civ. P. 15(a)(2). *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). Plaintiffs should, at a minimum, be afforded an opportunity to plead additional facts regarding WMI's direction and control of the accused operations. Dismissal of WMI with prejudice—the relief Defendants seek—would be improper.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety. In the alternative, to the extent the Court finds any claim insufficiently pleaded, Plaintiffs respectfully request leave to amend.

16

OF COUNSEL:
Robert J. Rauch
LAW OFFICES OF ROBERT J. RAUCH
25141 Star View Road
Mt. Vernon, Washington 98273
(360) 708-7296

Larry D. Moffett
LAW OFFICE OF LARRY D. MOFFETT PLLC
39 County Road 231
Oxford, MS 38655
(662) 298-4435

Dated: July 6, 2026

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Plaintiffs*

17