10278IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGENCO HOLDINGS, LLC. and BIO-ENERGY (WASHINGTON), LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 26-432 (JLH) |
| WASTE MANAGEMENT, INC., and WM RENEWABLE ENERGY, LLC, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)**

OF COUNSEL:

David M. Stein
Nancy M. Olson
OLSON STEIN LLP
240 Nice Lane #301
Newport Beach, CA 92663

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jennifer Ying (#5550)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Defendants*

July 13, 2026

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... ii

I.   ARGUMENT ................................................................................... 1

    A.   Defendants are Licensed so Plaintiffs' Claims are Barred ...................................... 1

    B.   Plaintiffs' Patent Rights are Exhausted.................................................................. 5

    C.   Equitable Estoppel Should Bar This Lawsuit. ......................................................... 6

    D.   If the Complaint is Not Barred by License, Patent Exhaustion, or Equitable Estoppel, Then it Should be Dismissed Because Plaintiffs Do Not Plausibly Allege That Defendants Are Acting Beyond the Scope of the Licenses. ................ 7

    E.   WMI Should be Dismissed from this Case........................................................... 10

II.  CONCLUSION.................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) (en banc)...............................................................................3

*Bethel v. Jendoco Constr. Corp.*,
  570 F.2d 1168 (3d Cir. 1978)...................................................................................................1

*Bloom v. Hearst Enter., Inc.*,
  33 F.3d 518 (5th Cir. 1994) .....................................................................................................2

*Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*,
  88 F.3d 347 (5th Cir. 1996) .....................................................................................................2

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*,
  940 S.W.2d 587 (Tex. 1996).....................................................................................................2

*Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*,
  84 F.4th 979 (Fed. Cir. 2023) ................................................................................................10

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010).................................................................................................3

*Gevo, Inc. v. Butamax(TM) Advanced Biofuels LLC*,
  C.A. No. 12-1724, 2013 WL 3381258 ...................................................................................10

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
  608 U.S. --, 146 S. Ct. 1391 (2026) .......................................................................................10

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
  581 U.S. 360 (2017)..................................................................................................................4

*Jacobs v. Nintendo of Am., Inc.*,
  370 F.3d 1097 (Fed. Cir. 2004)........................................................................................4, 5, 6

*LiTL LLC v. HP Inc.*,
  C.A. No. 23-121-JCG, 2026 WL 1875679 (D. Del. June 30, 2026) ....................................5, 6

*LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*,
  Case No. 1:22-CV-1167-RP, 2023 WL 2290291 (W.D. Tex. Feb. 27, 2023)..........................8

*SIPCO, LLC v. Jasco Prods. Co., LLC*,
  Case No. CIV-19-00709-PRW, 2022 WL 610192 (W.D. Ok. 2022).......................................8

ii

*South Hampton Co. v. Stinnes Corp.*,
    733 F.2d 1108 (5th Cir. 1984) ...................................................................................2

*Swirlate IP LLC v. Keep Truckin, Inc.*,
    C.A. No. 20-1283-CFC, 2021 WL 3187571 (D. Del. July 28, 2021)........................................8

*WBCMT 2007 C33 Off. 9720, L.L.C. v. NNN Realty Advisors, Inc.*,
    844 F.3d 473 (5th Cir. 2016) ...................................................................................4

*Westchester Fire Ins. v. Heddington Ins. Ltd.*,
    883 F. Supp. 158 (S.D. Tex. 1995) ...........................................................................2

**Rules**

Fed. R. Evid. 201 ...............................................................................................10

## I.    ARGUMENT

Plaintiffs' Opposition (D.I. 17) does nothing to address the Complaint's deficiencies. Rather than answer the question as to what WMRE paid to license if it purportedly could not practice the '779 Patent without a further license, Plaintiffs simply ignore it. And, rather than explain *what* activities purportedly are outside the scope of the license, Plaintiffs merely repeat the same circular logic that the patent is not exhausted because WMRE's activities are not licensed. Plaintiffs further fail to address Judge Choe-Grove's recent decision on similar license/exhaustion issues that Defendants specifically identified in their notice of supplemental authority. *See* D.I. 16. Plaintiffs then dismiss Defendants' equitable estoppel argument, merely asserting it is factual without ever disputing the facts that are plain on the face of the Complaint and attachments. Plaintiffs also try to avoid their lack of plausible allegations by asserting they had to give only "fair notice" of their claims. That is the point. To the extent the Complaint is not barred on its face by license, patent exhaustion, or equitable estoppel (it is), then it fails to give "fair notice" of what activities allegedly are outside the scope of the license and thus infringing. Finally, Plaintiffs do no more than repeat their conclusory allegations, unsubstantiated by any facts, that WMI "directs and controls" the activities of WMRE so as to be liable for induced infringement.

Defendants' Motion should be granted because it is apparent from the face of Plaintiffs' Complaint and exhibits (*e.g.*, the licenses to Air Liquide and WMRE) that the Complaint fails to state a plausible claim for infringement or breach of contract. *See Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (affirmative defenses are amenable to dismissal "if the predicate establishing the defense is apparent from the face of the complaint").

### A.    Defendants are Licensed so Plaintiffs' Claims are Barred.

Plaintiffs do not dispute that Air Liquide has a broad, express license, that WMRE purchased express sub-licenses to the '779 Patent from Air Liquide for each of the 16 accused

sites, or that BEW was already compensated for each of those licenses. Instead, Plaintiffs try to avoid these express licenses by arguing they do not cover practicing the entire method claimed in the '779 Patent, only part of it, applying what they call a "two-tiered" license. (D.I. 17 at 3). But that argument is contrary to black letter patent law (*i.e.*, practicing only some steps of a claimed method cannot infringe that method), and it would be a non-sensical interpretation of the license agreements because it would not permit WMRE to practice the very method it paid to license without a further license for the same patent rights.

Under Texas law (which governs these licenses), the Court must enforce the unambiguous contractual language as written, according to "the objective intent" evidenced by the language used, rather than any subjective intent of the parties. *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996). "If the written instrument is susceptible to only one reasonable construction, [that construction] will be given force." *Westchester Fire Ins. v. Heddington Ins. Ltd.*, 883 F. Supp. 158, 163 (S.D. Tex. 1995). Determining whether a contract is ambiguous is a question of law. *Bloom v. Hearst Enter., Inc.*, 33 F.3d 518, 521 (5th Cir. 1994). Ambiguity arises only when the court is left genuinely uncertain which of two possible meanings is the proper one. *South Hampton Co. v. Stinnes Corp.*, 733 F.2d 1108, 1114 (5th Cir. 1984). "An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. For an ambiguity to exist, both proposed interpretations must be *reasonable*." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

The license interpretation Plaintiffs advance is not reasonable. For example, the concept of a "product-tied" license is non-sensical in the context of the '779 Patent. Plaintiffs' Opposition fails to address the fundamental question asked in Defendants' Motion (D.I. 15 at 10): if the 16 licenses WMRE bought from Air Liquide do not allow WMRE to perform the methods claimed in

2

the '779 Patent, then what do they cover? Notably, the '779 Patent is not directed to a product or an apparatus; nor is it directed to a method of using a product. It is directed to a method for processing landfill gas. D.I. 1-1 at 2 (Title, Abstract).

There are myriad additional reasons why Plaintiffs' proposed "two-tier" license argument is not a reasonable interpretation of the license agreements between Ingenco and Air Liquide or Air Liquide and WMRE. For example, if Plaintiffs' theory were correct, there would be no need for WMRE to buy a "tier one" license through Air Liquide because WMRE could just buy a "tier two" license from BEW and automatically be covered. And, if Plaintiffs' theory were correct, then the sub-licenses WMRE bought from Air Liquide would be rendered a nullity because they would not permit WMRE to perform the very method for which it entered into the transactions. Under Plaintiffs' interpretation, WMRE would have paid for nothing, and BEW would have collected money for nothing. Why would BEW get paid at all if all that was being licensed was permission to use Air Liquide's equipment but not to use it to perform the entirety of the claimed method? This is not a reasonable interpretation of the agreements.

Moreover, the '779 Patent contains only method claims. D.I. 1-1 at 7-8. "To infringe a method claim, a person must have practiced all steps of the claimed method." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010) (internal quotation marks and citation omitted); *see also Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). Thus, if one step is missing, there is no infringement. There would never be a need to take a license that allows a user to perform some, but not all, steps in a claimed method because performing some (but not all) steps cannot be an act of infringement. It would thus be a non-sensical and unreasonable interpretation of the licenses for WMRE to pay to be licensed to just a portion of the claimed methods because no license is needed in that instance.

3

Further, the February 15, 2012 license from Ingenco to Air Liquide (D.I. 1-3) makes no mention whatsoever of a two-tier license or of any restriction on licensing scope; it expressly conveys the broad, unfettered right of Air Liquide to sell its equipment, and for its customers to use that equipment to practice the claimed methods. *Id*. at 3 (§ 3.1 License), 9 (Ex. A Label License). Once Ingenco granted this license to Air Liquide, it exhausted its right to control the commerce downstream. *See Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 381-82 (2017); *Jacobs v. Nintendo of Am., Inc.*, 370 F.3d 1097, 1100-01 (Fed. Cir. 2004) (patentee cannot license a right, receive compensation, and then derogate from the right granted). Here, Plaintiffs cannot later reclaim the rights granted to Air Liquide and its customers who have a sub-license.

Plaintiffs' proposed interpretation thus should be rejected because it would lead to absurd results. *See WBCMT 2007 C33 Off. 9720, L.L.C. v. NNN Realty Advisors, Inc.*, 844 F.3d 473, 483 (5th Cir. 2016) (rejecting proposed interpretation of contract where that interpretation "create[d] various absurdities throughout the [contract] – so much so that the interpretation cannot be considered a reasonable alternative interpretation….") (applying Texas law).

The only reasonable interpretation of these licenses is that Ingenco licensed Air Liquide to perform the claimed method *and* granted Air Liquide the right to grant a sub-license to the claimed methods to any customer who buys the Air Liquide equipment to use in connection with that endeavor. D.I. 1-3, 1-4. Thus, as a matter of law, Plaintiffs' claims are barred.[1]

Plaintiffs do not plausibly contradict that, at a minimum, Defendants have an implied license to the methods claimed in the '779 Patent. Where, as here, an implied license derives from

---

[1] Defendants submit that, for purposes of this Motion, the Court need decide only that Plaintiffs' proposed interpretation is not a reasonable one and thus cannot create an ambiguity in an otherwise clear contract. The only reasonable interpretation, however, of the "project wide" language in §3.01 of the Label License is that a further license may be needed for other activities at a site that do not incorporate a Licensed Product. There is no such allegation here.

an express license, the only requirement to show its existence is that the circumstances show one should be inferred. *LiTL LLC v. HP Inc.*, C.A. No. 23-121-JCG, 2026 WL 1875679, at *3 (D. Del. June 30, 2026) (collecting cases). In *LiTL*, the Court found (on similar facts) that an original license agreement conveyed an express license, and that the licensee's customers did not infringe because they had implied licenses to use the licensee's products in connection with those licenses. *Id.* at *4-5 (finding implied license even where the underlying express license purported to restrict any implied licenses). Tellingly, Plaintiffs misstate the applicable standard (D.I. 17 at 9) and do not even mention *LiTL*, despite receiving notice (*see* D.I. 16).

Here, if the Court declines to find an express license at this stage, a license should be inferred because there would be no reason for WMRE to enter into the transactions with Air Liquide other than to have the right to use Air Liquide's equipment to practice the '779 Patent. Plaintiffs' attempt to rid WMRE of that right should be rejected. *See LiTL*, 2026 WL 1875679, at *5 ("In accordance with the basic contract law principle that a party may not assign a right, receive consideration for it, and proceed to take steps to rid the right of its commercial worth, the Court concludes that Section 4.1(a) of the Agreement granted Licensee the broad right to sell its products, and that broad right bars Plaintiff from interfering with that right by prohibiting Licensee's customers from using Licensee's products.") (citing *Jacobs*, 370 F.3d at 1101).[2]

### B.   Plaintiffs' Patent Rights are Exhausted.

In their Opposition, Plaintiffs never explain why patent exhaustion does not apply other than to repeat their circular logic that the Defendants' activities are outside the scope of the license

---

[2] Plaintiffs' argument that the assertion of a license defense and/or patent exhaustion is somehow an admission that Defendants are infringing the '779 patent (D.I. 17 at 13) is misplaced. Defendants raise these defenses because they are an absolute bar to any allegation of infringement (*i.e.*, even assuming, for the sake of argument, infringement). It is not an admission about what Defendants do, which could not be properly raised before the Court at this stage.

without identifying what those activities are. Plaintiffs also assert that whether sales by Air Liquide substantially embody the claimed invention is a fact issue. D.I. 17 at 9-10. But Plaintiffs do not explain what else these sales could be? The claimed method is an integrated, multi-step process. The Air Liquide equipment would be useless at the licensed sites if it could not be used to process natural gas, and the claimed method cannot be performed if the equipment is removed. The license from Ingenco to Air Liquide, and the authorized sub-licenses from Air Liquide to WMRE that accompanied the sale of its equipment, are unambiguous in conveying the right to perform the claimed method. *See LiTL*, 2026 WL 1875679, at *4 (express license "would be diminished if Plaintiff could interfere with Licensee's contractual right to sell Licensee Products to customers such as Defendants.") (citing *Jacobs*, 370 F.3d at 1101). Nothing else is required to establish exhaustion.

It is a fundamental tenet of exhaustion that the doctrine exists to prevent a patentee from granting rights to a patent and then later trying to claw back some rights in derogation of the original grant. *See, e.g., LiTL*, 2026 WL 1875679, at *3 (patentee is estopped from taking back in any extent that for which it has already received consideration) (citing *Jacobs*, 370 F.3d at 1101). That is precisely what Plaintiffs are trying to do here by double-dipping to collect money, twice, for the same patent rights. As a matter of law, this is not permitted. *See generally LiTL*, 2026 WL 1875679, at *5 (finding implied sub-license and exhaustion where customer purchased from licensed supplier and where licensee agreed to pay patentee one-time payment). This case presents the same situation.

### C.    Equitable Estoppel Should Bar This Lawsuit.

Contrary to Plaintiffs' assertion (D.I. 17 at 10-11), all the facts that are needed to decide Defendants' equitable estoppel defense are clear from the face of the Complaint and its incorporated exhibits. Indeed, it is the unusual nature of this case, where Plaintiffs sat silently by

6

on 16 separate occasions spanning ten years where WMRE entered into a Label License with Air Liquide in connection with its construction of each of 16 sites, the very purpose of which was to create a facility to convert waste to renewable natural gas, that makes the application of equitable estoppel particularly appropriate here. The very purpose of the equitable estoppel doctrine is to bar a claim for patent infringement that should not be permitted to be brought. It would make no sense if that issue could be adjudicated only at the end of a case. Instead, where, as here, the underlying issues that give rise to the estoppel are not in dispute, the most practical application of the doctrine is to apply it at the outset to avoid the inequity of the claims.

For example, all of the following is undisputed: WMRE has been building renewable natural gas facilities for almost a decade; WMRE paid Air Liquide, and Air Liquide, in turn, paid BEW, a patent license fee for each of the 16 accused sites over the past decade; and Plaintiffs did not complain or ask for any additional payments before March 2026 (incidentally, shortly before the '779 Patent expires).[3] D.I. 15 at 13-14. These undisputed facts from the Complaint and incorporated exhibits establish that all of the elements of equitable estoppel are met. Plaintiffs allege no contrary facts. This is the textbook case for applying equitable estoppel now, to conserve the substantial resources that would be required to litigate a case that equity says should never have been brought.

> **D.    If the Complaint is Not Barred by License, Patent Exhaustion, or Equitable Estoppel, Then it Should be Dismissed Because Plaintiffs Do Not Plausibly Allege That Defendants Are Acting Beyond the Scope of the Licenses.**

Plaintiffs next try to escape the licenses by asserting, without details or factual support, that

---

[3] Plaintiffs fault Defendants for citing a press release in its Motion discussing WMRE's efforts in this space (Opp. at 11), but, to be clear, Defendants do not rely upon it for this Motion. It is clear from the face of each Label License that it was entered into in connection with WMRE's building of a plant in a particular location. D.I. 1-4. Plaintiffs' Complaint and its attachments provide everything necessary for the Court to decide the issues raised in the Motion.

Defendants are somehow acting beyond the scope of any applicable license. D.I. 17 at 2, 7, 9. But Plaintiffs' arguments continue to be completely circular. They merely repeat that Defendants are acting beyond the scope of their licenses without identifying what conduct in particular is outside the scope. Thus, to the extent not otherwise dismissed (as it should be), the Complaint fails to provide the required fair notice of the allegedly improper conduct. *See, e.g., Swirlate IP LLC v. Keep Truckin, Inc.*, C.A. No. 20-1283-CFC, 2021 WL 3187571, at *2 (D. Del. July 28, 2021) (granting motion to dismiss because fair notice is lacking where the complaint does not allege how the accused product performs the claimed steps); *LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*, Case No. 1:22-CV-1167-RP, 2023 WL 2290291, at *4 (W.D. Tex. Feb. 27, 2023) (granting motion to dismiss where plaintiff did not identify what purportedly infringes specific limitations); *SIPCO, LLC v. Jasco Prods. Co., LLC*, Case No. CIV-19-00709-PRW, 2022 WL 610192, at *2-3 (W.D. Ok. 2022) (complaint failed to plausibly state claim for infringement because complaint lacked facts showing how the accused products perform each step of each claim element).

Plaintiffs' "fair notice" argument is perplexing. Plaintiffs argue the Complaint provides the required fair notice because it "recites the patented method steps it accuses at each site, including the membrane-permeate recycle." D.I. 17 at 12. But it is axiomatic that to allege infringement of a method claim, the plaintiff must allege that all steps of the method are performed. *See supra*, at 3. A method claim rises and falls as a whole. Thus, merely saying a defendant infringes because it performs the steps of the method without identifying any details provides no notice whatsoever, much less sufficiently plead, fair notice. *See, e.g., Swirlate,* 2021 WL 3187571, at *2.

For example, what specific conduct do Plaintiffs contend is within the scope of the license, and what do they contend falls outside the scope of the license? Plaintiffs never allege or provide any details. Instead, they allege, in a purely conclusory fashion, that Defendants are acting beyond

8

the scope of the licenses. How? By doing what? They do not say. They repeatedly say only that Defendants are using "equipment, processes, and methods" that are allegedly beyond the scope of the licenses. D.I. 17 at 1, 4, 7, 9. What equipment? What processes? What methods? They do not say. Plaintiffs' Complaint would not survive scrutiny under the old Form 18, much less the more stringent pleading requirements the Supreme Court adopted in *Iqbal/Twombly*.

Finally, Plaintiffs try to excuse their insufficient allegations by pointing to an inspection request they made in late March 2026, more than eight years after the first Label License for the first WMRE site, and only shortly before filing suit. (D.I. 1 ¶¶ 27-28, 44, 46; D.I. 17 at 4, 12-13, 15). Setting aside the inaccuracies in these accusations,[4] if anything, they are admissions that Plaintiffs lacked the required bases to file this lawsuit. But Plaintiffs cannot have it both ways. Plaintiffs cannot, on the one hand, contend they do not know what equipment is being used at the sites, while, at the same time, contending (as they apparently do in their Opposition) that the use of any equipment other than the Licensed Product from Air Liquide required a further license. Plaintiffs certainly have been on notice from the beginning that other equipment is used at the sites, as it is self-evident that a renewable natural gas plant requires equipment other than what Air Liquide sells. In any event, Plaintiffs cannot rely on their own failure to assert inspection rights over nearly a decade as a basis to excuse their insufficient pleadings. Plaintiffs' Complaint needed to state a sufficient basis for its claims; discovery is not a vehicle to try and develop a basis for a lawsuit, so Plaintiffs' inspection complaints are of no moment.[5] Because these allegations fail to

---

[4] Although the Court need not consider these assertions for purposes of the Motion, it is incorrect that Defendants did not respond. Defendants said they would look into Plaintiffs' allegations, which came out-of-the-blue after nearly 10 years of entering into label licenses and building plants. Plaintiffs filed this lawsuit, however, without waiting to have further discussions.

[5] Plaintiffs' Opposition mentions, for the first time, some kind of post-lawsuit transfer of rights. D.I. 17 at 3, n.1 & 14. Plaintiffs have provided Defendants no notice of this transfer or documentation of it. Defendants reserve all rights to respond later as is warranted.

provide "fair notice" of the allegedly improper conduct, the Complaint should be dismissed.

### E.    WMI Should be Dismissed from this Case.

Finally, Plaintiffs argue for maintaining claims against WMI solely based on the bare, unsupported allegation that WMI "directs or controls" its subsidiary, WMRE. Opp. at 5. But it is well established that mere status as a parent corporation does not state a claim for actions by a subsidiary. D.I. 15 at 19-20.  Nor are conclusory allegations of directing and controlling the actions of a subsidiary sufficient without specific details of the alleged control as it relates to the alleged conduct. *Id.*; *see also, e.g., Gevo, Inc. v. Butamax(TM) Advanced Biofuels LLC*, C.A. No. 12-1724, 2013 WL 3381258, at *2-3 & *3 n.1 (D. Del. July 8, 2013) (dismissing complaint where no underlying facts supported conclusory allegation of control).

Contrary to Plaintiffs' argument (D.I. 17 at 15-16), dismissal with prejudice is appropriate here because leave to amend would be futile. Plaintiffs do not and cannot dispute that WMI is merely a holding company with no operations.[6] Plaintiffs' Complaint contains no plausible allegations suggesting any specific conduct by WMI that could give rise to liability; nor does it contradict WMI's SEC filings. The law does not permit claims against a parent holding company, especially claims requiring intent, absent specific, credible allegations concerning its conduct. *See Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.,* 608 U.S. --, 146 S. Ct. 1391, 1399-1401 (2026) (induced infringement requires active steps to encourage or instruct infringement).

## II.    CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss.

---

[6]      *See* https://www.sec.gov/Archives/edgar/data/823768/000110465926012049/wm-20251231x10k.htm (Waste Management 2025 Annual Form 10-K, filed Feb. 9, 2026) at 4 ("Waste Management, Inc. is a holding company and all operations are conducted by its subsidiaries"). The Court may properly take judicial notice of this. Fed. R. Evid. 201; *Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 989 n.6 (Fed. Cir. 2023) (Form 10-K is subject to judicial notice).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

_____

OF COUNSEL:

Nancy M. Olson
David M. Stein
OLSON STEIN LLP
240 Nice Lane #301
Newport Beach, CA 92663

Karen Jacobs (#2881)
Jennifer Ying (#5550)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Defendants*

July 13, 2026

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 13, 2026, upon the following in the manner indicated:

Karen Keller, Esquire                                    *VIA ELECTRONIC MAIL*
Emily DiBenedetto, Esquire
SHAW KELLER LLP
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiffs*

Robert J. Rauch                                          *VIA ELECTRONIC MAIL*
LAW OFFICES OF ROBERT J. RAUCH
25141 Star View Road
Mt. Vernon, Washington 98273
*Attorney for Plaintiffs*

Larry D. Moffett                                         *VIA ELECTRONIC MAIL*
LAW OFFICE OF LARRY D. MOFFETT LLC
39 County Road 231
Oxford, MS 38655
*Attorney for Plaintiffs*

*/s/ Karen Jacobs*

Karen Jacobs (#2881

12